_____

No. 95-1756
_____

Karen Flath,                           *
                                       *
           Appellant,                  *
                                       *      Appeal from the United States
      v.                               *      District Court for the
                                       *      District of North Dakota.
Garrison Public School District        *
No. 51; Dennis Carter,                 *
                                       *
           Appellees.                  *
_____

                   Submitted:  October 20, 1995

                      Filed:  April 26, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN and MORRIS SHEPPARD
      ARNOLD, Circuit Judges.
_____

WOLLMAN, Circuit Judge.


      Karen Flath appeals from the district court's[1] grant of summary
judgment in favor of the Garrison Public School District and its elementary
principal, Dennis Carter, in Flath's lawsuit alleging a violation of her
constitutional and statutory rights.  We affirm.


                                   **I.**


      Flath was employed by the Garrison Public School District as a
Chapter One teacher from 1983 through 1992, when her contract was not
renewed.  In 1989, Dennis Carter became the elementary principal at
Garrison Public School.  As elementary principal, Carter supervised and
evaluated Flath's teaching abilities.  During

_____

      [1]The Honorable Patrick A. Conmy, United States District Judge
for the District of North Dakota.

the spring of 1990, a parent complained to Carter that Flath had inappropriately disciplined her child. Carter met with Flath about this incident but did not issue a formal reprimand.

During the next two years, the working relationship between Flath and Carter began to deteriorate. In the fall of 1990, Flath criticized Carter's administrative techniques in a school improvement survey. In April 1991, Carter issued a formal reprimand against Flath for her responses, viewing her remarks as a personal attack. Carter also reprimanded her in May 1991 for speaking out against him at a Garrison Education Association (GEA) meeting, claiming that she was causing dissension among the staff. In July 1991, Flath filed grievances challenging the April and May reprimands. The Garrison School Board (Board) eventually resolved these matters in her favor and the formal reprimands were removed from her permanent file.

During the 1991-92 school year, Carter and Flath had numerous confrontations. In October 1991, Carter evaluated Flath and gave her unsatisfactory marks for discipline in the classroom. Later that month, Carter received a complaint that Flath had struck a student on the chin. Flath admitted that she had struck the child lightly. As a result, Carter devised an action plan for Flath which prohibited her from using inappropriate physical contact on students to control behavior.

In February 1992, Carter received three additional complaints from parents who claimed that Flath had used inappropriate techniques such as pulling hair, twisting ears, and bending back fingers to discipline students. Carter investigated these incidents and met with Flath to discuss them. On Flath's next evaluation, Carter gave her unsatisfactory marks for her disciplinary techniques.

As a result of the disciplinary problems, Carter in March 1992 recommended that the Board not renew Flath's contract. The Board voted to contemplate nonrenewal of Flath's contract and sent her notice of the nonrenewal hearing. In April 1992, the Board held a hearing and voted not to renew Flath's contract, citing her "lack of ability to appropriately discipline students" as the reason for nonrenewal.

## II.

We review the district court's granting of summary judgment de novo. Mumford v. Godfried, 52 F.3d 756, 759 (8th Cir. 1995). Thus, we will affirm the lower court's decision if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Plumbers Union v. City of Omaha, 946 F.2d 599, 600 (8th Cir. 1991) (citations omitted). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Mumford, 52 F.3d at 759 (citing Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

Flath first alleges that her due process rights were violated when she was terminated from her teaching position. She bases her claim on the Board's failure to produce any witnesses to substantiate the reasons for nonrenewal, thus denying her the opportunity to cross examine the witnesses testifying against her. She also claims that Carter violated her due process rights because he relied solely on hearsay evidence in recommending nonrenewal of her contract.

Section 15-47-38(5) of the North Dakota Century Code sets forth the procedure that must be followed to nonrenew a teacher's contract in North Dakota. First, the reasons given by a school board for nonrenewal "must be sufficient to justify the contemplated action . . . and may not be frivolous or arbitrary but

must be related to the ability, competence, or qualifications of the teacher . . . ." N.D. Cent. Code § 15-47-38(5) (1993). The statute provides that "[a]t the meeting with the board the teacher may then produce such evidence as may be necessary to evaluate the reasons for nonrenewal, and either party may produce witnesses to confirm or refute the reasons. The administrator shall substantiate the reasons with written or oral evidence . . . ." Id.

We find Flath's contentions unpersuasive. Section 15-47-38(5) does not require a school board to produce witnesses. Nor does subsection (5) require the Board to sustain its reasons for nonrenewal. See Lithun v. Grand Forks Pub. Sch., 307 N.W.2d 545, 553 n.6 (N.D. 1981) (noting difference in school board's evidentiary burden of proof in dismissing teacher under 15-47-38(2) and nonrenewing teacher's contract under 15-47-38(5)).

Subsection (5) specifically states that the reasons for nonrenewal may be established by oral or written evidence. The evidence presented at the hearing included Flath's unsatisfactory teacher evaluations, complaints from parents criticizing Flath's discipline techniques, and documentation of the action taken by the administration as a result of the complaints. In addition, Flath admitted that she had struck one of the students. We find this evidence sufficient to support the nonrenewal of Flath's contract.

Whether or not section 15-47-35(5) required the Board and Carter to produce witnesses to substantiate the charges against her, Flath was provided all the process due her under the Fourteenth Amendment. See Schuler v. Univ. of Minnesota, 788 F.2d 510, 515 (8th Cir. 1986) (university's noncompliance with student grievance procedure irrelevant if constitutionally adequate process is otherwise provided), cert. denied, 479 U.S. 1056 (1987). To satisfy pretermination due process, a public employee is entitled to notice of the charges, an explanation of the evidence, and an

opportunity to be heard.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).  Generally, something less than a formal adversarial hearing is required.  Demming v. Housing & Redevelopment Auth., 66 F.3d 950, 953 (8th Cir. 1995).  Rather, the purpose of the pretermination hearing is to ensure that "`there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'"  Id. (quoting Loudermill, 470 U.S. at 546).  We have held that "`informal meetings with supervisors'" are sufficient to satisfy the due process hearing requirement.  Schleck v. Ramsey County, 939 F.2d 638, 641 (8th Cir. 1991) (quoting Riggins v. Board of Regents of Univ. of Nebraska, 790 F.2d 707, 711 (8th Cir. 1986)).  Moreover, we have rejected a discharged employee's argument that a university grievance procedure was constitutionally inadequate because it would not have granted her the opportunity to confront or cross examine witnesses at a post-termination hearing.  Riggins, 790 F.2d at 711-12.

Flath received notice of the contemplated nonrenewal and an explanation of the charges against her.  She had an opportunity to respond to the charges at the nonrenewal hearing.  She was thus afforded all the process she was due.  See Demming, 66 F.3d at 954; Riggins, 790 F.2d at 710-11.

### III.

Flath next asserts that the nonrenewal of her contract violated her First Amendment rights.  Specifically, she claims her contract was not renewed because she criticized Carter in a school improvement survey and because she voiced concerns about Carter at a GEA meeting.  The district court granted summary judgment for defendants on this claim, stating that "nothing has been shown which could rise to the status of a violation of a constitutional or federally protected right."

We find it unnecessary to decide whether Flath's statements constituted protected speech, for, assuming that they did touch on matters of public concern, Flath has failed to show that her nonrenewal was substantially motivated by these statements. Carter presented no evidence regarding these incidents at the nonrenewal hearing. Moreover, the Board had already agreed with Flath that the reprimands were unwarranted and instructed Carter to remove the reprimands from Flath's file.

## IV.

Flath also contends that the Board violated section 15-47-38(6). Subsection (6) states:

> No teacher may be discharged and no school board may refuse to renew a teacher's contract under this section based solely upon an investigation of alleged child abuse or neglect . . . in which a determination was made that no probable cause existed to believe that the child abuse or neglect was indicated, or in which a determination was made that probable cause did exist to believe that child abuse or neglect was indicated but a decision relating to the alleged abuse or neglect has not been made by a court of competent jurisdiction.

Flath asserts that the district court erred in finding section 15-47-38(6) inapplicable. We find her argument to be unpersuasive. At all times, the Board's reason for nonrenewal was Flath's inability to discipline students. The Board was not aware of the Social Services' investigation when it voted to contemplate nonrenewal of Flath's contract. As the district court stated in its Memorandum and Order:

> The record is clear and apparently undisputed that no member of the school board or administration was aware that the parent's complaints had been also made to the County, or that any investigation of alleged child abuse or neglect had in fact been done. Nowhere does it appear that any board member was privy to any information gained

through any investigation, or that any investigative materials were relied upon in any way.

We have examined Flath's remaining contentions and find them to be without merit.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.