Susan HILL, Plaintiff,

v.

HAMILTON COUNTY PUBLIC
HOSPITAL, Defendant.

No. C97–3109–MWB.

United States District Court,
N.D. Iowa,
Central Division.

April 26, 1999.

Blake Parker, Blake Parker Law Office, Fort Dodge, IA, for Plaintiff.

Thomas W. Foley, Kathryn Atkinson Overberg, Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ...................................................939

II. STANDARDS FOR SUMMARY JUDGMENT ...............................940

III. FACTUAL BACKGROUND ..........................................942

IV. LEGAL ANALYSIS ..............................................943
 A. The Claims Pursuant to 42 U.S.C. § 1983 ..................943
 1. The procedural due process claim ....................944
 2. The substantive due process claim ...................948
 B. The ADA Claim ...........................................949
 C. The Wrongful Discharge Claim ............................951
 D. The False Light Claim ...................................951
 E. The Defamation Claim ....................................952

V. CONCLUSION ...................................................954

Does an employer violate an employee's due process protection by delaying its notification to the employee that she is under investigation for illegal drug use in the workplace when the delay prevents the employee from procuring an exonerating drug test? This is one of the questions the court must answer in resolving the defendant employer's motion for summary judgment in this employment discrimination lawsuit. In addition to her procedural due process claim, the plaintiff has raised federal claims for purported violations of her right to substantive due process and protection under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as well as pendant state law claims for wrongful discharge, false light invasion of privacy, and slander. The defendant has moved for summary judgment on each of plaintiff's claims.

### I. INTRODUCTION

This lawsuit arises from plaintiff Susan Hill's discharge from employment as a registered nurse with defendant Hamilton County Public Hospital (the "Hospital") on May 14, 1997. Hill filed her original complaint on November 10, 1997, and filed an amended complaint on April 2, 1998.

Hill's amended complaint sets forth three federal and two state law claims against the Hospital. Hill's first two federal constitutional claims are brought pursuant to 42 U.S.C. § 1983.[1] In her first

---

1. Section 1983 provides, in pertinent part, as follows:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983.

claim, Hill alleges that the Hospital deprived her of her property interest in her public employment position by discharging her without due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution. In her second federal claim, Hill alleges that the Hospital violated her right to substantive due process, as guaranteed by the Fourteenth Amendment to the United States Constitution, by conducting an investigation into her alleged conduct that was unreasonable, arbitrary, and capricious. Third, Hill alleges a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). The essence of this claim is that the Hospital falsely regarded Hill as having a disability—drug addiction—which substantially limited her ability to perform a major life function—work—and terminated her in contravention of the ADA. Fourth, Hill alleges that she was wrongfully discharged according to the policies set forth in the Hospital's employee handbook. Finally, Hill claims that the Hospital placed her in a "false light" by asserting that "she is an illicit drug user and abuser." Amended Complaint at ¶ 27. The Hospital answered Hill's amended complaint on April 15, 1998, denying each of Hill's claims and raising a variety of affirmative defenses.

On November 16, 1998, the Hospital filed the present motion for summary judgment. The Hospital contends it is entitled to judgment in its favor on each of the claims raised in Hill's amended complaint. Hill has resisted the motion for summary judgment in its entirety.

Telephonic oral arguments were heard by the court on January 12, 1999. Hill was represented by Blake Parker, The Blake Parker Law Office, Fort Dodge, Iowa. The Hospital was represented by Thomas W. Foley and Kathryn Atkinson Overberg of Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, Iowa. During the arguments, the court granted Hill's request to further amend her amended complaint for purposes of adding a defamation claim. Additionally, both parties were granted time to file supplemental briefs on the issues raised during the oral arguments.

Hill filed a Second Amended and Supplemented Complaint on January 19, 1999, adding a sixth cause of action for slander. The crux of this claim is that the Hospital slandered Hill "by discharging her on the basis that she is an illicit drug user and abuser." Second Amended and Supplemented Complaint at ¶ 37. Hill contends that the Hospital knew or should have known that she would be compelled to disclose the reason for her discharge during job interviews with potential employers. Hill further asserts that the reason set forth by the Hospital for her discharge constitutes slander *per se,* and was made with reckless disregard for its truth or falsity. The Hospital has also moved for summary judgment on this claim.

## II. STANDARDS FOR SUMMARY JUDGMENT

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R.CIV.P. 56 in a number of recent decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the

expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(a)–(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimina-

tion cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Med. Ctr.,* 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 615 (8th Cir.1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 862 (8th Cir. 1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir.1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.,* 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand,* 827 F.2d at 364). Indeed, as the United States Court of Appeals for the Eighth Circuit recently observed, "[s]ummary judgment seldom should be granted in discrimination cases where inferences are often the basis of the claim...." *Breeding v. Gallagher & Co.,* 164 F.3d 1151, 1156 (8th Cir.1999).

■ Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford,* 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judg-

ment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford* ); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

■ However, the Eighth Circuit Court of Appeals has also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir. 1999) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate). Furthermore, "[s]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim." *Snow*, 128 F.3d at 1205; *accord Helfter*, 115 F.3d at 615; *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 762 (8th Cir.1995). With these standards in mind, the court turns to consideration of the Hospital's motion for summary judgment on Hill's claims.

### III. FACTUAL BACKGROUND

The court will not attempt an exhaustive recitation of the disputed and undisputed facts, but will instead set forth the factual background gleaned from the undisputed facts presented in the summary judgment record. In its legal analysis, the court will address where necessary Hill's assertions of genuine issues of material fact that may preclude the granting of summary judgment in favor of the Hospital.

Hill began working for the Hospital as a registered nurse in April 1991. She started as a floor nurse and was later assigned to the Hospital's critical care unit. Initially, Hill was hired to work a "weekend package," which meant she worked from 7:00 p.m. to 7:00 a.m. Friday through Sunday. In 1996, the Hospital eliminated the "weekend package" schedule. Hill then assumed the schedule of a full-time registered nurse, working approximately three twelve-hour shifts per week. Typically, Hill's shifts began at 7:00 p.m. and ended between 7:00 and 7:30 a.m.

On Sunday evening, May 4, 1997, Hill was scheduled to work a shift in the Hospital's medical-surgical unit. She took her first shift break sometime between 8:00 and 9:00 p.m. When the weather was agreeable, Hill customarily spent her shift breaks smoking cigarettes and visiting with other workers at a picnic table located near the Hospital's ambulance garage. On the evening of May 4, 1997, Hill's usual break companion was off duty. Rather than sit by herself, Hill decided to walk around the perimeter of the Hospital. As she returned from her walk, Hill ran into and briefly visited with two co-employees—Diana East, RN and Colleen Berens, RN—and former co-worker, Lynette Holdgraffer. Shortly thereafter, Hill returned to her work post.

Hill worked another twelve-hour shift on May 9, 1997, and again on May 13, 1997. Near the end of her shift on May 13, Hill received a telephone call from Joan Hisler, Director of Inpatient Services. Hisler asked Hill to come to her office for a meeting at the completion of the shift. Although Hill was not advised of the purpose of this meeting, she was told that she could bring a union representative with her.[2]

---

2. At all times relevant, Hill was a member of the Iowa Nurses Association ("INA"). The INA is the duly certified collective bargaining representative for the nurses employed by the Hospital.

When she completed her shift in the early morning hours of May 14, 1997, Hill went to Hisler's office unaccompanied by a union representative. Present at this meeting were Hill, Hisler, and Roberta Knutson, the Assistant Administrator of Nursing. Hilser informed Hill that two employees—Pam High, a respiratory therapist and Denise Helmick, a registered nurse—had observed a powdery white substance under Hill's nose after Hill returned from her first break on the evening of May 4, 1997. Hisler further advised Hill that several employees had noticed a powdery white substance under Hill's nose on other occasions and had observed Hill engaging in "hyper" behavior or displaying an elevated mood after her break.

When Hill inquired why this matter was not brought to her attention until almost ten days after the fact, Hisler indicated that the interim period was necessary to conduct an investigation. Hill denied the allegations of drug use, and suggested that the powdery white substance could have been dried "snot." Hill requested that she be allowed to take a drug test but was informed by Hisler that a drug test was not an option. Hill then inquired what she could do to prove the allegations were untrue. Knutson informed Hill that the Hospital had proof of her drug usage. Hill was then discharged.

That same day, Hill procured a drug test from a Dr. Dan Cole, Fort Dodge, Iowa. This blood test revealed no evidence of drug usage.

Following her termination, Hill requested the INA to file a grievance on her behalf in accordance with the grievance procedure set forth in the INA's collective bargaining agreement with the Hospital. Shortly before the matter was to be submitted to binding arbitration before a neutral arbiter selected by the parties, Hill voluntarily withdrew both her request for arbitration and her grievance on the grounds that the only available remedies were reinstatement and back pay.[3]

Since her discharge from the Hospital, Hill has attempted to secure another nursing position. When asked by prospective employers why she was discharged from the Hospital, Hill has relayed the reason asserted by the Hospital—illicit drug usage—and has immediately indicated that this reason was unfounded. Hill's search for a nursing position has been unsuccessful to date.

## IV. LEGAL ANALYSIS

### (including some further findings of fact)

This case presents a mixture of federal and state law claims. The court will turn first to its analysis of the federal claims.

### A. The Claims Pursuant to 42 U.S.C. § 1983

As indicated previously, Hill alleges two claims pursuant to 42 U.S.C. § 1983. The first claim is that the Hospital failed to provide Hill with procedural due process prior to making its decision to terminate her. Specifically, Hill complains that the decision to terminate her was made on May 13, 1997—the day before the meeting in which she was informed of the allegations of drug use. Under these circumstances, Hill contends she was denied adequate notice of the charges and a meaningful opportunity to be heard prior to the adverse employment action. Second, Hill alleges that the Hospital violated her right to substantive due process. Essentially, Hill asserts that the Hospital's investigation of the drug use allegations was unreasonable, and resulted in an arbitrary and capricious decision to terminate her employment.

The Hospital disputes both of these claims. In response to Hill's claim of a procedural due process violation, the Hos-

---

**3.** Hill explained this action by stating, "I do not want to go back to work in an environment where they perceive that I use and abuse drugs while at work." Susan Hill's Affidavit at ¶ 10.

pital asserts that the undisputed facts reveal Hill was afforded adequate pre-deprivation—as well as post-deprivation—protections. Likewise, the Hospital maintains it is entitled to summary judgment on Hill's claim of a substantive due process violation because its decision to terminate Hill's employment was made after a full investigation and is supported by the observations of Hospital employees.

### 1. The procedural due process claim

■ Due process claims are generally subjected to a two-part analysis: (1) is the asserted interest protected by the due process clause; and if so, (2) what process is due? *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Wallin v. Minnesota Dep't of Corrections,* 153 F.3d 681, 690 (8th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); *Sanders v. Woodruff,* 908 F.2d 310, 312 (8th Cir.). *cert. denied sub nom. Herron v. Woodruff,* 498 U.S. 987, 111 S.Ct. 525, 112 L.Ed.2d 536 (1990); *Tyler v. Black,* 811 F.2d 424, 427 (8th Cir.1987), adopted in relevant part, 865 F.2d 181 (8th Cir.1989) (en banc), *cert. denied,* 490 U.S. 1027, 109 S.Ct. 1760, 104 L.Ed.2d 196 (1996). In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court wrote, "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews,* 424 U.S. at 332, 96 S.Ct. 893; *Demming v. Housing Redev. Auth.,* 66 F.3d 950, 953 (8th Cir.1995) (quoting *Mathews*). The possession of a protected life, liberty, or property interest is thus a "condition precedent" to the government's obligation to provide due process of law, and where no such interest exists, there is no due process violation. *Movers Warehouse, Inc. v. City of Little Canada,* 71 F.3d 716, 718 (8th Cir.1995); *Zenco Dev. Corp. v. City of Overland,* 843 F.2d 1117, 1118 (8th Cir.1988) (observing "[a] discussion of whether a party has a right to procedural due process must start with the question of whether the party has a property interest in the thing taken away.").

■ Protected interests "are created and their dimensions are defined" not by the Constitution but by an independent source, such as state or federal law. *Movers Warehouse,* 71 F.3d at 718 (citing *Craft v. Wipf,* 836 F.2d 412, 416 (8th Cir.1987)); *Zenco Dev. Corp.,* 843 F.2d at 1118. In this case, there is no dispute that as a member of the INA, Hill possessed a protected property interest in continued employment under the terms of the collective bargaining agreement between the INA and the Hospital.[4] *See Brock v. Roadway Express, Inc.,* 481 U.S. 252, 259, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987). The court will therefore proceed directly to a consideration of what process is due.

■ In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court made clear that the "process due" public employees with a property interest in continued employment is a pre-termination hearing. *Loudermill,* 470 U.S. at 547–48, 105 S.Ct. 1487; *see also Gilbert,* 520 U.S. at 924, 117 S.Ct. 1807 (considering process due employee facing suspension without pay and observing that in *Loudermill,* "we concluded that a public employee dismissible only for cause was entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing."). The United States Court of Appeals for the Eighth Circuit has made the following observations regarding the due process requirements set forth in *Loudermill* :

> In *Cleveland Board of Education v. Loudermill,* the Supreme Court held that a "hearing" was necessary prior to the termination of a tenured public employee. 470 U.S. 532, 545, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). This hear-

---

4. The collective bargaining agreement between the INA and the Hospital provides that

discharges are to be effectuated only for "proper cause." Defendant's Exhibit A.

ing is intended to serve as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494. Rather than prescribe a set format for pretermination hearings, the Court emphasized that "[t]he essential requirements of due process ... are notice and an opportunity to respond," and that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494.

*Coleman v. Reed,* 147 F.3d 751, 754 (8th Cir.1998). Under *Loudermill,* therefore, it is apparent that tenured public employees are entitled to (1) oral or written notification of the charges against them; (2) an explanation of the employer's evidence; and (3) an opportunity to present their side of the story. *Flath v. Garrison Pub. Sch. Dist. No. 51,* 82 F.3d 244, 247 (8th Cir.1996) (citing *Loudermill*); *Post v. Harper,* 980 F.2d 491, 494 (8th Cir.1992) (same); *Peery v. Brakke,* 826 F.2d 740, 742 (8th Cir.1987) (same); *Riggins v. Bd. of Regents of Univ. of Nebraska,* 790 F.2d 707, 710 (8th Cir.1986) (same).

Hill contends the pre-termination procedure utilized by the Hospital in her case failed to comply with the first and third due process requirements articulated in *Loudermill.* Specifically, Hill complains that she was not provided adequate notice of the charges against her so that she could rebut the allegations, and that she was denied a meaningful opportunity to present her side of the story because the decision to terminate her was made prior to the pre-termination hearing.[5]

Under the first *Loudermill* requirement, the Hospital was required to notify Hill of the charges against her. *See Flath,* 82 F.3d at 247. Hill contends that the Hospital should have notified her at the outset of its investigation instead of waiting until her pre-termination meeting began and then "ambushing" her with the charges. The Hospital, not surprisingly, disagrees, and cites several Eighth Circuit cases in support of its contention that Hill was in fact afforded sufficient notice of the charges.

As the Hospital correctly observes, the United States Court of Appeals for the Eighth Circuit has determined that an employee need not be advised of the charges pending against him or her prior to a pre-termination hearing. *See, e.g., Coleman,* 147 F.3d at 754 (stating employee received adequate oral notice of the charge against her when confronted in a face-to-face meeting); *Riggins,* 790 F.2d at 711 (holding employee did not have to be notified of charges prior to meeting). Nevertheless, Hill directs the court's attention to the dissenting opinion in *Coleman,* authored by Judge Heaney, in support of her ambush argument. In his dissent, Judge Heaney takes issue with the majority's proclamation that an employer need not notify an employee prior to the pre-termination hearing. *Coleman,* 147 F.3d at 757. Judge Heaney distinguishes the case cited by the majority in support of this proposition, *Riggins v. Board of Regents,* 790 F.2d 707, 711 (8th Cir.1986), on the basis that there was "no doubt that the employee [in that case] was aware of the allegations to be discussed at her pre-termination hearing." *Id.* Similarly, Hill observes that the cases cited by the Hospital in support of its assertion that she was provided ample notice are factually distinguishable on the ground that the employees in those cases had some idea that they were under investigation prior to their pre-termination hearings.[6]

---

5. Hill does not challenge the Hospital's explanation of the evidence against her—the second requirement under *Loudermill.*

6. In *Flath v. Garrison Public School District,* 82 F.3d 244 (8th Cir.1996), the employee had been reprimanded numerous times over the course of several months and was aware that

As the court understands it, the gravamen of Hill's notice argument is that by waiting until the pre-termination hearing to apprise Hill of the charges of illicit drug use, the Hospital foreclosed Hill's ability to produce the most compelling evidence of her innocence—an exonerating drug test. The court recognizes that in factually dissimilar circumstances, the Eighth Circuit Court of Appeals has stated that although public employees must be advised of the charges pending against them prior to any termination of benefits, employees ordinarily need not be notified of the charges prior to their pre-termination hearings. *See Coleman,* 147 F.3d at 754. However, the court is equally cognizant that " 'due process' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances." *Gilbert v. Homar,* 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). Rather, "[d]ue process ... is a flexible concept that varies with the particular situation." *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Therefore, determining "what process is due" depends on the "practicalities and peculiarities of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Further, the court is mindful of the competing interests to be served by a pre-termination hearing—"the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of an erroneous termination." *Loudermill,* 470 U.S. at 542–43, 105 S.Ct. 1487 (citing *Mathews,* 424 U.S. at 335, 96 S.Ct. 893). With these principles and interests in mind, the court is unable to conclude—at the summary judgment stage—that Hill was afforded adequate notice to ensure procedural due process protection.

There are countless reasons why an employer may find it necessary to remove a public employee from his or her post. Equally numerous are an employee's explanations for why termination is inappropriate. Rarely, however, may the matter be resolved as swiftly and accurately as in the case of suspected drug use.[7] In these discrete cases, a drug test may be used to verify the employer's suspicions or to exonerate definitively the accused employee. Of course all this presupposes that the employer becomes aware of the alleged drug use within a time-frame sufficient to notify the employee so that the employee may procure an accurate test if he or she chooses to do so. However, when these conditions can be met, the court finds that procedural due process safeguards require notice to the employee sufficient to enable testing to be done.

Furthermore, in this court's view, the competing fundamental interests, identified by the United States Supreme Court in *Mathews,* 424 U.S. at 335, 96 S.Ct. 893, and relied upon in *Loudermill,* 470 U.S. at 542, 105 S.Ct. 1487, to justify the need for some form of pre-termination hearing will be directly advanced by this notice requirement. First, if an employee is promptly notified that he or she is under suspicion of drug use in the workplace, the employee may choose to procure a drug test to disprove the allegations. It is up to the employee to pursue testing if that is the course the employee decides to follow. Presuming the employee is able to produce an exonerating test result, the pri-

she was under investigation for the disciplinary techniques she imposed on students. *Flath,* 82 F.3d at 246. Likewise, in *Demming v. Housing & Redevelopment Authority,* 66 F.3d 950, 952 (8th Cir.1995), the employee also had advance notice that her performance was under review. Finally, in *Schleck v. Ramsey County,* 939 F.2d 638, 642 (8th Cir. 1991), the employees had advance notice of the sexual harassment investigation pending against them.

7. When properly administered, screening drug tests such as the Enzyme–Multiplied Immunoassay Technique, and confirming drug tests such as the Gas Chromatography/Mass Spectrometry are highly accurate. Douglas L. Stanley, *Employee Drug Testing,* 61 J.Kan. B.A. 19, 20–21 (1992).

vate interest of the employee in retaining continued public employment is directly advanced. The nature of drug abuse allegations is such that often the accused employee's only current defense is an oral denial. Thus, a drug test may well be the employee's best—if not only—hope of persuading the employer that the drug usage allegation is false. Second, the employer's interest in the expeditious removal of drug using employees and in reducing the administrative burdens of removal will also be directly advanced by this notice requirement. A negative drug test will, in most cases, quickly convince the employer that the allegations are false—directly reducing administrative burdens including eliminating the need for full blown postdeprivation procedural due process hearings. Where the test results are positive, most employees will abandon or at least narrow their challenge to termination thereby eliminating or at least substantially reducing the employer's administrative burden. Finally, the risk of erroneous termination—borne by both the employee and the employer—will be directly and dramatically reduced. In most cases, drug tests will definitely inculpate or exculpate the employee. In other cases, drug tests will often be the key piece of scientific evidence that tilts the scales of justice toward the correct result. The simple fact remains that in the contemporary workplace, few allegations are more stigmatizing and devastating to future employment opportunities than allegations of on-the-job drug usage. Unfortunately, these allegations are also among the most difficult to defend against. If appellate court pronouncements about the flexible nature of procedural due process are to breathe meaning into the realities of today's workplace, then surely procedural due process is elastic enough to apply here and in its application, advance the pursuit of truth and fairness.

 As stated above, the court is well aware that in different factual settings, the Eighth Circuit Court of Appeals has taken the position that employees need not be provided notice of the charges against them prior to pre-termination hearings. However, the court is also aware that, by their nature, due process protections elude a rubber stamp application of inflexible and stagnant rules and instead depend, at least to some extent, on "the practicalities and peculiarities of the case." *Mullane*, 339 U.S. at 314, 70 S.Ct. 652. The court's conclusion that notice is a proper procedural protection in cases of suspected drug use in the workplace is buttressed not only by the stigmatizing and potentially devastating effect accusations of drug use on the job may have on future employment opportunities, but also by the fact each of the "*Mathews* factors" is well-served by the notice requirement. The court's holding in this regard is very narrow: If an employer contemplates termination as a potential sanction for an employee's alleged drug usage, procedural due process requires the employer to give the employee notice at the time the employer first learns of the alleged drug use *unless* the employer can demonstrate good cause. One example of "good cause" is the circumstance in which an employer's ongoing investigation into allegations of drug use could be seriously jeopardized by immediately informing the employee of the charges. In such situations, the good cause standard would excuse the employer from providing immediate notice.[8]

 It should be emphasized that under the due process analysis espoused by the court today, an employer complies with due process protections by notifying the employee of the charges of drug use when they first become known to the employer (unless good cause exists for not doing so)—whether or not the time for procuring an accurate drug test has expired. At all

8. Here, the Hospital has not suggested that providing Hill with notice of the allegations of on-the-job drug use would have interfered with its investigation, nor has the Hospital affirmatively asserted any possible "good cause" for not providing notice. Therefore, the court leaves open the parameters of the notice requirement in cases where an ongoing investigation may be hindered or "good cause" exists.

times the burden of procuring a drug test remains with the employee. In some cases, an employer's timely notice to the accused employee may occur after the time has elapsed for the employee to produce an accurate drug test. This circumstance is beyond the control of the employer and therefore beyond the protection of this procedural due process analysis.

Turning to the facts of this case, the court finds that summary judgment is inappropriate on Hill's due process claim. While it is undisputed that Hill was orally notified of the charges of drug usage at the onset of the May 14, 1997 meeting, there is a factual dispute as to when the Hospital first became aware of Hill's alleged drug use on May 4, 1997, and as to whether Hill could have produced an exonerating drug test if she had been notified of the charges prior to her pre-termination hearing.

Although the court has already concluded that summary judgment is inappropriate on this claim, it will briefly address Hill's additional challenges with a view toward narrowing the issues for trial. As for Hill's complaint that the decision to terminate her was made prior to her pre-termination hearing, the court finds no constitutional violation. The Hospital aptly points out that this issue was addressed and resolved in *Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387 (8th Cir.), *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988). In that case, the United States Court of Appeals for the Eighth Circuit announced that "[d]ue process ... does not require *predecision* hearings. It only requires an opportunity to be heard prior to the termination of benefits." *Jackson*, 840 F.2d at 1391 (emphasis added) (citing with approval *Bignall*

*v. North Idaho College*, 538 F.2d 243 (9th Cir.1976)); *see also Schleck*, 939 F.2d at 641 (observing "[t]he [pre-termination] hearing does not have to precede the termination decision, but only must precede the termination of benefits."). Although the facts taken in the light most favorable to Hill reveal that the decision to terminate her was made prior to the pre-termination meeting on the morning of May 14, 1997, it is equally clear that this meeting occurred prior to Hill's discharge and attendant termination of benefits. Under *Jackson* and *Schleck*, no more was required. *Jackson*, 840 F.2d at 1391; *Schleck*, 939 F.2d at 641.

Hill also contends she was denied a meaningful opportunity to present her side of the story because the timing of her pre-termination hearing foreclosed any meaningful opportunity to exculpate herself. As the court has already indicated, genuine issues of material fact remain to be resolved on this point. It may well be that by the time the Hospital became aware of the allegations, a drug test would not have provided a reliable indication of any relevant prior drug use. If this is the case, no due process violation resulted from the Hospital's failure to notify Hill in advance of the pre-termination hearing. These, of course, are the factual issues that must be resolved at trial.[9]

### 2. The substantive due process claim

Hill also asserts a substantive due process claim against the Hospital. The gravamen of this claim is that the Hospital's investigation into Hill's alleged drug use constituted "truly irrational governmental action," thereby depriving Hill of her property interest in employment.[10]

**9.** Hill has not challenged the post-deprivation procedures available to her in her due process claim.

**10.** The court presumes from Hill's moving papers that the interest at stake in her substantive due process claim is a property interest in her employment. However, to the extent Hill has attempted to allege that the Hospital deprived her of a liberty interest without due process by publishing stigmatiz-

ing reasons for her discharge, the court finds such a claim must fail. There is no evidence in the summary judgment record to support the contention that the Hospital published or otherwise advised third parties of the reasons for Hill's discharge. Moreover, there is no dispute that Hill could have availed herself of an extensive post-termination hearing to "cleanse" her name but declined to do so. Under these circumstances, the court is un-

Plaintiff's Brief in Support of Resistance to Summary Judgment at p. 15.

■■■ As the parties acknowledge, to prevail on a substantive due process claim, the plaintiff must establish that the government action complained of is "truly irrational," that is, "something more than . . . arbitrary, capricious, or in violation of state law." *Chesterfield Dev. Corp. v. City of Chesterfield,* 963 F.2d 1102, 1104 (8th Cir.1992) (quoting *Lemke v. Cass County,* 846 F.2d 469, 470–72 (8th Cir.1987) (en banc)); *see also Condor Corp. v. City of St. Paul,* 912 F.2d 215, 220 (8th Cir.1990).

Hill asserts that the Hospital's failure to notify her that she was under investigation for illegal drug usage and to place her on investigative suspension amounts to truly irrational governmental action, "particularly in light of nursing standards and patient care." Plaintiff's Brief in Support of Resistance to Motion for Summary Judgment at 13. Hill argues that had this course been followed by the Hospital, she would have had an opportunity to "cleanse" her name by immediately obtaining a drug test. Hill further asserts that she "also may have been able to come up with a logical explanation as to what could have been under her nostril because it would have been within the relevant time frame of when the powdery white substance was actually seen by the other nurses." Plaintiff's Brief in Support of Resistance to Motion for Summary Judgment at 13–14.

Viewing the facts in the light most favorable to Hill, as it must at this posture, the court nevertheless concludes that there is no evidence in the record to support Hill's claim that the Hospital's investigation into her alleged drug usage amounted to arbitrary, capricious, or otherwise truly irrational government action. The facts demonstrate that soon after hospital management became aware of the allegations

of drug usage, an investigation was initiated. This investigation revealed seven employees who reported seeing a powdery white substance under Hill's nose. Five of these employees also reported that Hill displayed noticeable changes in temperament, or mood swings.

In sum, the court finds that there is no evidence in the record to support Hill's claim that the Hospital's investigation constituted truly irrational government action sufficient to sustain her claim for a violation of her right to substantive due process. Accordingly, summary judgment in favor of the Hospital is appropriate on this claim.

### B. The ADA Claim

■■■ In her final federal claim, Hill alleges that the Hospital discharged her in violation of the provisions of the ADA. In support of this claim, Hill argues that the Hospital falsely and erroneously perceived her as suffering from a disability which substantially limited her ability to perform a major life function—work—and discharged her because of this perceived disability.[11] The Hospital has moved for summary judgment on this claim on the ground that even if it did erroneously perceive Hill as an illegal drug user, illegal drug use is not an impairment that qualifies as a protected disability under the ADA.

Having reviewed the relevant statutory provisions and the sparse case law available on the issue, the court concludes that the Hospital is only partially correct. Section 12114(a) provides as follows:

(a) **Qualified individual with a disability.** For purposes of this subchapter, the term "qualified individual with a disability" shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the

---

able to conclude that Hill has properly identified a deprivation of a liberty interest.

11. Hill correctly points out that there are three types of "perceived disabilities," defined in 29 C.F.R. § 1630.2(1)(1)–(3), that are ac-

tionable under the ADA. At issue here is the category in which the employee is not impaired, but is regarded by the covered employer as having a substantially limiting impairment. 29 C.F.R. § 1630.2(1)(3).

covered entity acts on the basis of such use.

42 U.S.C. § 12114(a). If this were the end of the analysis, the Hospital would indeed be entitled to summary judgment on this claim. However, as will become apparent, this is not the end of the analysis. Although neither party originally cited to the provision, the court notes that 42 U.S.C. § 12114(b)(3) is applicable here. That subsection provides as follows:

> **(b) Rules of Construction.** Nothing in subsection (a) of this section shall be construed to exclude as a qualified individual with a disability an individual who—
>
> > (3) is erroneously regarded as engaging in such use, but is not engaging in such use.

42 U.S.C. § 12114(b)(3). Therefore, although a current drug user is precluded from relying upon the protections of the ADA, an employee who is "erroneously regarded as engaging in such use, but is not engaging in such use" is not so precluded. 42 U.S.C. § 12114(a)–(b)(3); *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 610 (10th Cir.1998) (explaining "[b]ecause § 12114(b)(3) excludes erroneous perception of illegal drug use from being disallowed as a disability under § 12114(a), the ADA protects employees who are erroneously regarded as being current illegal drug users."); *Jones v. Corrections Corp. of Am.*, 993 F.Supp. 1384, 1386 (D.Kan. 1998) (considering this provision and observing that "a plaintiff can establish that he is disabled within the meaning of the ADA by showing that he was regarded as being addicted to drugs, but was in fact not engaging in such drug use."). This is exactly the circumstance forming the basis of Hill's ADA claim. The court finds that Hill has generated a genuine issue of material fact as to whether the Hospital erroneously perceived her to be engaging in illegal drug use during her employment with the Hospital.

Of course, Hill must also establish that in erroneously perceiving her as an illegal drug user, the Hospital perceived Hill as having a disability which substantially limits a major life activity. *See Nielsen,* 162 F.3d at 610 (stating that the erroneous perception of illegal drug use is treated like any other perception of disability and "is only to be considered a qualifying disability if the employer perceives the disability to substantially limit a major life activity."); *accord Berg v. Norand Corp.,* 169 F.3d 1140, 1144 (8th Cir.1999) (observing that the ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." citing 42 U.S.C. § 12102(2)). Hill contends that the Hospital regarded her alleged illicit drug use as substantially limiting her ability to perform the major life activity of work. To establish this *prima facie* element of her ADA claim, Hill must demonstrate that the Hospital perceived her as being "limited from performing a class of jobs or a broad range of jobs within various classes." *Berg,* 169 F.3d at 1144. Hill has generated a genuine issue of material fact on this issue as well. Hill points to the deposition testimony of Hospital employees Knutsen, Brummett, and Hisler in which these employees acknowledge that the only way Hill could have retained her job was to admit drug usage. At this stage of the proceedings, the court finds that Hill has generated a fact question as to the Hospital's perception of her being limited to perform a class of jobs or a broad range of jobs within various classes.

Finally, Hill is required to demonstrate that she is qualified to perform the essential functions of the nursing position and that she suffered an adverse employment action because of her perceived disability. *See Berg,* 169 F.3d at 1144. The record reveals that there are genuine issues of material fact as to each of these elements. In sum, the court finds that Hill has generated fact issues regarding the sufficiency of her *prima facie* case of discrimination under the ADA. Because the Hospital has

raised no other challenges to it, summary judgment on this claim is inappropriate.

### C. The Wrongful Discharge Claim

 Hill also asserts a state law tort claim for wrongful discharge based on the Hospital's Employee Handbook. Hill claims she was entitled to rely on the handbook's "system of progressive discipline," and because the Hospital failed to follow the procedures set forth in the handbook during its investigation, her termination based on that investigation was wrongful. The Hospital counters Hill's claim for wrongful discharge on two grounds. First, the Hospital points out that the introduction to the Employee Handbook explicitly advises employees that the handbook is not intended to create contractual obligations between the Hospital and its employees. Second, the Hospital asserts that the disciplinary provision relied upon by Hill is discretionary, therefore lacking the "language of command" necessary to create a contractual relationship.

Recently, the Iowa Supreme Court reiterated that the determination of whether the language of an employee handbook creates a contract should be made by reference to the following three questions:

(1) Is the handbook in general and the progressive disciplinary procedures in particular mere guidelines or a statement of policy, or are they directives?
(2) Is the language of the disciplinary procedures detailed and definite or general and vague?
(3) Does the employer have the power to alter the procedures at will or are they invariable?

*Jones v. Lake Park Care Ctr., Inc.,* 569 N.W.2d 369, 375 (Iowa 1997) (citing *Anderson v. Douglas & Lomason Co.,* 540 N.W.2d 277, 281 (Iowa 1995)). "These questions help determine whether an employee is reasonably justified in understanding a commitment has been made." *Phipps v. IASD Health Serv. Corp.,* 558 N.W.2d 198, 204 (Iowa 1997).

 However, the Iowa Supreme Court has also instructed that any disclaimers contained in the handbook must be considered in the analysis because a disclaimer "can prevent the formation of a contract by clarifying the employer's intent not to make an offer." *Id.* In assessing the import of a given disclaimer, the court must consider "(1) whether the disclaimer is clear in its terms; and (2) whether the coverage of the disclaimer is unambiguous." *Id.*

The court has read the pertinent provisions of the Hospital's Employee Handbook and is compelled to agree with the Hospital's assertion that the disclaimer contained in the Introduction clearly states the Hospital's intention not to create any type of employment contract. Specifically, the pertinent provision—contained in Part A of the handbook—states as follows:

> The policies and procedures contained in this Handbook shall not in any way express or imply a contract between Hamilton County Public Hospital and its employees or limit the Hospital's right to terminate any employee at any time.

Exhibit L at p. A–4. This disclaimer is unambiguous and unequivocally applies to the entire handbook. Under these circumstances, the court concludes, as a matter of law, that no employment contract arose between the parties as a result of the provisions of the Employee Handbook. Summary judgment in favor of the Hospital is appropriate on this claim.

### D. The False Light Claim

 In support of her state law claim of "false light," Hill asserts that she has been required to "self-publish" the Hospital's "false characterization of the reason for [her] discharge any time she interviews for a nursing position." Plaintiff's Brief in Support of Resistance to Motion for Summary Judgment at 19. The Hospital has moved for summary judgment on this claim on the grounds that Hill cannot establish that the Hospital "publicized" any information that placed her in a false light,

and even if her self-publication theory is successful, the Hospital is entitled to protection under the defense of qualified privilege.

 The Iowa Supreme Court recognizes the common law tort of false light invasion of privacy and has approved the elements for this cause of action as set forth in the RESTATEMENT (SECOND) OF TORTS § 652E. *Willson v. City of Des Moines*, 386 N.W.2d 76, 83 n. 8 (Iowa 1986). "A claim for false light invasion of privacy is based upon an untruthful publication which places a person before the public in a manner that would be highly offensive to a reasonable person." *Id.* Specifically, the Restatement defines the tort of false light as follows:

### § 652E. Publicity Placing Person in False Light

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

RESTATEMENT (SECOND) OF TORTS § 652E.

The "publicity" requirement of a false light tort is explained in RESTATEMENT (SECOND) OF TORTS § 652D comment a. Specifically, comment a provides in pertinent part as follows:

*a. Publicity.* The form of the invasion of the right of privacy covered in this Section depends upon publicity given to the private life of the individual. "Publicity," as it is used in this Section, differs from "publication," as that term is used in § 577 in connection with liability for defamation.... "Publicity" ... means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantial-

ly certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of communication that reaches or is sure to reach, the public.

Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons....

RESTATEMENT (SECOND) OF TORTS § 652D comment a. The element of "publicity" in a false light claim therefore differs from the element of "publication" in other defamation claims. The latter means any communication by the defendant to a third party; the former concerns communications made to the public at large. *Ali v. Douglas Cable Communications*, 929 F.Supp. 1362, 1383 (D.Kan.1996); *accord Dominguez v. Davidson*, 266 Kan. 926, 974 P.2d 112, 120 (1999).

As indicated previously, Hill's false light claim is premised on communications concerning her discharge from the Hospital that she asserts she felt compelled to make to prospective employers. However, the court need not determine whether the doctrine of self-publication applies to false light tort claims because Hill has failed to present evidence that her communications to potential employers were so widespread as to constitute "publicity" within the meaning of this tort. Assuming for the sake of argument that Hill was indeed compelled to publicize the Hospital's stated reason for her discharge to potential employers, the undisputed facts reflect that at most, Hill disseminated this information to merely a handful of interviewers. The court finds that such dissemination is insufficient as a matter of law to fulfill the publicity requirement of a false light tort claim.

### E. The Defamation Claim

Finally, the Hospital has moved for summary judgment on Hill's defamation claim.

The Hospital asserts that there is no evidence in the record indicating that it published the reason for Hill's discharge to any third party. Alternatively, the Hospital contends that even if Hill is permitted to pursue this claim under the doctrine of compelled self-publication, it is still sheltered from liability by a valid qualified privilege.

The law of defamation consists of the twin torts of libel and slander, and the gist of a defamation action is the publication of written or oral statements which tend to injure a person's reputation and good name. *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994) (citing W. PAGE KEETON, *Prosser and Keeton on the Law of Torts* § 111, 15 771 (5th ed.1984)). Slander generally consists of the oral publication of defamatory matter. *Id.* Libel in Iowa is the "malicious publication, expressed either in printing or in writing, or by signs and pictures, tending to injure the reputation of another person or to expose [the person] to public hatred, contempt, or ridicule or to injure [the person] in the maintenance of [the person's] business." *Vinson v. Linn–Mar Community Sch. Dist.*, 360 N.W.2d 108, 115 (Iowa 1984).

Where there is no communication to the general public, but instead the statements are made only to the plaintiff, and the plaintiff disseminates the statements, there is no defamation. *McBride v. City of Sioux City*, 444 N.W.2d 85, 92 (Iowa 1989); *Belcher v. Little*, 315 N.W.2d 734, 738 (Iowa 1982). The plaintiff cannot create a cause of action by communicating defamatory statements to others unless under a strong compulsion to do so. *Belcher*, 315 N.W.2d at 738. Whether such compulsion exists must be decided by the finder of fact under the circumstances in each case and must be based on the introduction of substantial evidence. *Id.*

In order to prevail on a defamation claim, a plaintiff must ordinarily prove that the statements were made with malice, were false, and caused damage. *Vinson*, 360 N.W.2d at 115 (citing *Vojak v. Jensen*, 161 N.W.2d 100, 104 (Iowa 1968)). However, some statements, constituting a special category of slander or libel "per se," are actionable without proof of malice, falsity, or special harm. *Lara*, 512 N.W.2d at 785; *Vinson*, 360 N.W.2d at 115–16; *Kelly v. Iowa State Educ. Ass'n*, 372 N.W.2d 288, 295 (Iowa Ct.App.1985). Words are defamatory per se if they are of such a nature, whether true or not, that the court can presume as a matter of law that their publication will have defamatory effect. *Vinson*, 360 N.W.2d at 116 (citing *Haas v. Evening Democrat Co.*, 252 Iowa 517, 107 N.W.2d 444, 447 (1961)). Among such statements are defamatory imputations affecting a person in his or her business, trade, profession, or office. *Lara*, 512 N.W.2d at 785; *Vojak*, 161 N.W.2d at 104; *Galloway v. Zuckert*, 447 N.W.2d 553, 554 (Iowa Ct.App.1989).

In the event Hill is allowed to pursue her claim for defamation per se under the doctrine of compelled self-publication, the Hospital relies upon the affirmative defense of qualified privilege.[12] As this court stated in *Thompto v. Coborn's Inc.*, 871 F.Supp. 1097, 1125 (N.D.Iowa 1994), the law recognizes that circumstances may arise when a person, in order to protect his or her own interest or the interest of others, must make statements about another which are defamatory or defamatory per se, and in such circumstances a qualified privilege bars liability. *Id.* (citing *Vojak*, 161 N.W.2d at 104); *Higgins v. Gordon Jewelry Corp.*, 433 N.W.2d 306, 308 (Iowa Ct.App.1988). The elements of a qualified privilege defense are that (1) the statements were made in good faith; (2) the defendant had an interest to be upheld; (3) the statements were limited in their scope to this purpose; (4) the statements were made on a proper occasion; and (5) publication was in a proper

---

12. Hill has not alleged that the Hospital has published the reason for her discharge to her prospective employers. Instead, Hill contends that she was compelled to "self-publish" the reason during interviews.

manner and to proper parties only. *Knudsen v. Chicago & North Western Transp. Co.,* 464 N.W.2d 439 (Iowa 1990) (citing *Brown v. First Nat'l Bank of Mason City,* 193 N.W.2d 547, 552 (Iowa 1972)). Of course, the privilege must not be abused or exceeded. *Lara,* 512 N.W.2d at 786. Therefore, the privilege is lost if the statements are not made in good faith, *Lara,* 512 N.W.2d at 786, *Haldeman v. Total Petroleum, Inc.,* 376 N.W.2d 98, 104 (Iowa 1985), or made with actual malice. *Knudsen,* 464 N.W.2d at 443; *Vinson,* 360 N.W.2d at 116. Actual malice in this context

depend[s] on the motive for the statement. Actual malice requires proof that the statement was made with malice in fact, ill-will or wrongful motive.

*Haldeman,* 376 N.W.2d at 103–04 (citing *Vinson,* 360 N.W.2d at 117); *Benishek v. Cody,* 441 N.W.2d 399, 403 (Iowa Ct.App. 1989). In the absence of actual malice, the qualified privilege extends even to statements that are untrue. *Vojak,* 161 N.W.2d at 105; *Benishek,* 441 N.W.2d at 402.

As an initial matter, the court notes that the parties dispute the applicability of the doctrine of compelled self-publication to Hill's defamation claim. The Hospital asserts that the doctrine does not apply here because by her own admission, Hill has repeated the given reason for her discharge to numerous persons in addition to prospective employers. Hill responds that she is not seeking damages for injury to her reputation stemming from her disclosures to family, friends, and others, but rather is limiting her claim to damages she allegedly endured from disclosing the information at job interviews.

▉ The court need not resolve this issue. Even if the doctrine of compelled self-publication were to apply to Hill's claim, the Hospital would still be entitled to summary judgment because Hill's allegations of defamation are covered by the defense of qualified privilege. *See Thompto,* 871 F.Supp. at 1128–29 (applying defense of qualified privilege to alleged defamatory statements self-published by the plaintiff-employee to prospective employers). The undisputed facts reveal that the Hospital's employees communicated the alleged slanderous statements in appropriate circumstances when under a duty to do so and only to those with a shared interest in the communications. Hill does not allege—nor does the record support—any suggestion that the Hospital affirmatively set out to communicate negative employment information to any of Hill's prospective employers. The Hospital's employees had an obvious interest in Hill's mental and physical condition while on duty, and communicated information only to others with a shared interest "in a manner and under circumstances fairly warranted by the occasion." *Lara,* 512 N.W.2d at 785. Under these circumstances, Hill's allegations of defamation fall within the realm of a qualified privilege.

To the extent Hill attempts to defeat the Hospital's qualified privilege defense by arguing that the Hospital's communications regarding her alleged illicit drug use were made with actual malice, the argument is rejected. Although Hill complains that the Hospital's investigation was flawed, she has failed to identify any evidence in the summary judgment record that the Hospital's investigation was made with "malice in fact, ill-will or wrongful motive." *See Haldeman,* 376 N.W.2d at 104. Summary judgment is therefore appropriate on Hill's defamation claim.

## V. CONCLUSION

The court concludes that the **Hospital's Motion for Summary Judgment must be granted in part and denied in part.** The Hospital is entitled to summary judgment on Hill's claim for a substantive due process violation because there is no evidence in the record to support Hill's assertion that the Hospital's investigation into her alleged drug use constituted truly irrational government action. The Hospital is also entitled to judgment in its favor on Hill's wrongful discharge claim because the court concludes, as a matter of law, that

the disclaimer contained in the employee handbook precludes any employment contract from arising between the parties as a result of the provisions of the employee handbook. Likewise, the Hospital is entitled to summary judgment on Hill's claims for false light invasion of privacy and defamation. As for Hill's false light claim, the court finds that Hill has failed to generate a genuine issue of material fact that her communications to prospective employers were so widespread as to constitute "publicity"—an essential element of this tort. As for Hill's defamation claim, even if she were allowed to pursue this cause of action under the doctrine of compelled self-publication, the Hospital has asserted a valid claim of qualified privilege. The court finds no evidence of lack of good faith or actual malice on the part of the Hospital such that the Hospital's claim of qualified privilege should be denied.

However, factual disputes prevent summary judgment on Hill's claims for a procedural due process violation and a violation of the ADA.

**IT IS SO ORDERED.**