# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2331

_____

| | | |
|---|---|---|
| Jo-Anne E. Coleman, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States District |
| | * | Court for the District of Minnesota. |
| Katrina Reed, sued as Katrina R. Reed, | * | |
| as an individual and in her official | * | |
| capacity; Betty J. Webb, as an individual | * | |
| and in her official capacity; Daniel | * | |
| Loewenson, as an individual and in his | * | |
| official capacity, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: March 12, 1998
Filed: June 26, 1998

_____

Before BEAM, and HEANEY, Circuit Judges, and KOPF[1], District Judge.

_____

BEAM, Circuit Judge.

Three government officials who were sued in their individual capacities under 42 U.S.C. § 1983, appeal the district court's denial of their claim of qualified immunity.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, sitting by designation.

Because we find that the suit fails to allege that the officials violated a clearly established constitutional right, we reverse.

## I.    BACKGROUND

Because this appeal is before us on a motion for summary judgment, we view the facts in the light most favorable to the non-moving party. See Kraft v. Ingersoll-Rand Co., 136 F.3d 584, 586 (8th Cir. 1998). In December of 1992, Jo-Anne Coleman was hired by the Minneapolis Public School District as principal of Lincoln Elementary School (Lincoln). After she had worked there for about five months, the school district received an anonymous telephone call alleging that Coleman had a prior felony record and had served time in prison. School officials investigated and discovered that Coleman had been convicted of several counts of Medicaid fraud and had served eighteen months in prison. School officials also examined Coleman's employment application which asked, "Have you ever been convicted of a misdemeanor or felony?" Coleman wrote "N/A."

On June 7, 1993, Daniel Loewenson, the school district's human resources director, telephoned Coleman and asked her to attend a meeting the next day with Katrina Reed, one of the school district's associate superintendents. Loewenson did not tell Coleman the purpose of the meeting, but did tell her that she could bring a union representative. Coleman attended the meeting accompanied by an attorney. Reed confronted Coleman with the conviction and Coleman's failure to reveal it on the application. Coleman acknowledged both. Reed then offered Coleman the opportunity to resign. Coleman refused and requested a formal hearing. Reed responded that Coleman was not entitled to any additional hearing, and informed her that if she did not resign, she would be terminated at that evening's meeting of the Minneapolis Public School Board of Education (Board).

That evening, Reed presented evidence of Coleman's conviction and employment application to the Board at an executive session, which was closed to the public. Following the executive session, the Board held its regular public meeting. Both Coleman and her attorney attended this meeting, but, although several members of the public voiced support for Coleman, neither Coleman nor her counsel sought to address the Board. The Board voted to discharge Coleman effective July 12, 1993. Coleman appealed her discharge to the Minnesota Court of Appeals. The court denied the petition, and the Minnesota Supreme Court summarily denied her petition for further review.

After Coleman's discharge, the Lincoln Elementary School community was in an uproar. A flier circulated speculating about the "true reason" for Coleman's discharge. In response to this confusion, the school district distributed a statement to all Lincoln elementary students informing them that, "Jo Coleman was convicted of a felony prior to being employed by the district and served time at the Shakopee Women's Reformatory." In a letter accompanying the statement, Betty Webb, another associate superintendent for the district, explained that the statement was "issued by the Minneapolis Public Schools with the knowledge and approval of the Human Resources Department and my office."

Coleman sued Webb, Reed and Loewenson (collectively, "the administrators") in both their official and individual capacities under 42 U.S.C. § 1983. She alleged that the administrators deprived her of property and liberty interests without due process of law.[2] The administrators moved for summary judgment based on qualified immunity. The district court denied the motion and the administrators appeal.

---

[2]Coleman also alleged breach of contract and intentional infliction of emotional distress. Those claims are not before us on appeal.

## II.  DISCUSSION

The administrators assert that they are entitled to qualified immunity as a matter of law.  In assessing that claim, we first consider whether Coleman has alleged the violation of a constitutional right.  See County of Sacramento v. Lewis, 118 S. Ct. 1708, 1714 n.5 (1998); Siegert v. Gilley, 500 U.S. 226, 232 (1991).  Coleman asserts that the administrators failed to provide her with procedural due process, claiming that her discharge deprived her of a property interest in continued employment with the school district and that dissemination of the statement approved by Webb deprived her of a liberty interest in her good name and reputation.[3]

### A.  Property Interest Claim

Coleman argues that her employment contract entitled her to be discharged only for cause.  The administrators respond that Coleman was a probationary employee, terminable at will.  This is a question of state law which we will leave to the Minnesota state courts.  See Board of Regents v. Roth, 408 U.S. 564, 577 (1972).  We will assume that Coleman had a property interest in her job.  However, even assuming the deprivation of a protected interest, we find that Coleman has not alleged a constitutional violation because she was provided adequate pre-termination process.

In Cleveland Board of Education v. Loudermill, the Supreme Court held that a "hearing" was necessary prior to the termination of a tenured public employee.  470 U.S. 532, 545 (1985).  This hearing is intended to serve as "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the

---

[3]As an initial matter, the administrators argue that they are not proper defendants in the property interest claim because the Board, not they, actually terminated Coleman. Loewenson and Reed also argue that they were not involved in the liberty interest claim.  Our holding makes it unnecessary to reach these arguments.

proposed action." Id. at 545-46. Rather than prescribe a set format for pre-termination hearings, the Court emphasized that "[t]he essential requirements of due process . . . are notice and an opportunity to respond," and that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546.

The pre-termination procedure afforded Coleman by the administrators satisfied the requirements established in Loudermill. See Powell v. Mikulecky, 891 F.2d 1454, 1459 (10th Cir. 1989) (finding that confrontation in which employee was asked and answered two questions was sufficient pre-termination hearing under Loudermill). Coleman received oral notice of the charge against her when Reed confronted her face-to-face in the June 8 meeting. See, e.g., Riggins v. Board of Regents, 790 F.2d 707, 711 (8th Cir. 1986) (holding that employee did not have to be notified of charges prior to meeting). She was represented by an attorney at that meeting. Coleman had an opportunity to rebut the charge, but chose instead to admit to it. Contrary to Coleman's assertion, Loudermill does not imply that there must be a delay between the "notice" and the "opportunity to respond" accorded to a public employee. See, e.g., Demming v. Housing and Redevelopment Auth., 66 F.3d 950, 953 (8th Cir. 1995) (rejecting plaintiff's claim that she was "ambushed" by charges and needed time to prepare an adequate response). Finally, Coleman has not identified "any information she would have used in rebuttal had she had more notice." Riggins, 790 F.2d at 711.

In addition to her meeting with Reed, Coleman had a second opportunity to respond to the charge against her. The evening session of the Board occurred after Coleman became aware of the charge.[4] However, Coleman did not utilize this second

---

[4]We note that Coleman's case differs from Winegar v. Des Moines Independent Community School District, because unlike Winegar, Coleman had the opportunity to address the administrators who made the termination recommendation, and the Board members who made the discharge decision. 20 F.3d 895, 901 (8th Cir. 1994).

opportunity to "present [her] side of the story." Loudermill, 470 U.S. at 546. Although she had counsel present to speak for her, and even after the Board heard from several members of the public regarding her proposed termination, Coleman remained silent. The administrators cannot be faulted for Coleman's failure to take advantage of this additional opportunity to be heard. See Riggins, 790 F.2d at 711.

Accordingly, Coleman has not alleged a violation of her constitutional right to procedural due process and the administrators are entitled to summary judgment on her property interest claim.

### B.    Liberty Interest Claim

Coleman asserts that the administrators deprived her of a liberty interest without due process. A liberty interest may be implicated when a governmental employer makes statements that may seriously damage the employee's good name. Roth, 408 U.S. at 573. A deprivation of constitutional magnitude may occur if such an employee is not granted the opportunity to clear his or her name. Id. Therefore, in order to state a claim under section 1983 for denial of due process based on the loss of a protected liberty interest, Coleman must establish three things. First, she must show that the reason for her discharge stigmatized her. See Shands v. City of Kennett, 993 F.2d 1337, 1347 (8th Cir. 1993). Second, she must show that the administrators made those reasons public. See Merritt v. Reed, 120 F.3d 124, 126 (8th Cir. 1997). The district court found that Coleman had met these two elements of her liberty interest claim, and we are inclined to agree.[5] Finally, Coleman must establish that she denied the charges

---

[5]We do find it odd, however, that Coleman has maintained that her criminal record was public knowledge and was generally known within the community of educators, while simultaneously claiming that publication of this information impaired her employment opportunities in education.

for which she was terminated. See Codd v. Velger, 429 U.S. 624, 627 (1977) (per curiam). Coleman has not satisfied this third requirement.

The district court, citing Pollock v. Baxter Manor Nursing Home, held that the truth of these charges was irrelevant to Coleman's liberty interest claim. 716 F.2d 545, 546-47 (8th Cir. 1983) (per curiam). In Pollock, the majority held that an employee is not required to prove that the stigmatizing charges are false in order to be entitled to a name-clearing hearing. Id. However, this court has always required a plaintiff to at least deny the substantial truth of the charges. See Hogue v. Clinton, 791 F.2d 1318, 1322 n.4 (8th Cir. 1986); Seal v. Pryor, 670 F.2d 96, 99 (8th Cir. 1982). In Pollock, the discharged employee also contested the accuracy of the allegations. Pollock v. Baxter Manor Nursing Home, 706 F.2d 236, 237 (McMillian, dissenting), rev'd on reh'g, 716 F.2d 545 (8th Cir. 1983). There is no purpose in holding a name-clearing hearing if the charges are uncontroverted. In Codd, the Court explained that an employee's failure to assert that an allegation "was substantially false . . . is fatal to [his] claim under the Due Process Clause that he should have been given a hearing." 429 U.S. at 627.

In this case, Coleman has never denied that she has a felony record, that she served time in prison, and that she failed to apprise the school district of these facts. These are the only charges published in the statement approved by Webb. Therefore, Coleman was not entitled to a name-clearing hearing.

Even if Coleman were entitled to a name-clearing hearing, procedural due process was satisfied because she received not one, but two. The due process requirements pronounced in Loudermill apply equally to liberty and property interests. See Schleck v. Ramsey County, 939 F.2d 638, 642-43 n.5 (8th Cir. 1991). Coleman had a chance to explain the allegations in her meeting with Reed and before the Board. This is more than the administrators were constitutionally required to provide.

Coleman has failed to allege the deprivation of a constitutional right. The administrators are therefore entitled to summary judgment on her liberty interest claim.

## III. CONCLUSION

For the foregoing reasons, the decision of the district court is reversed. The administrators are entitled to summary judgment on the claims discussed above. The case is remanded for proceedings consistent with this opinion.

HEANEY, Circuit Judge, dissenting.

I.

I respectfully dissent. Viewing the facts in the light most favorable to Coleman, I believe that the district court correctly denied the administrators' motion for summary judgment. While I do not quarrel with the brief statement of facts set forth by the majority, I believe it is necessary to supplement them to underscore the administrators' bad faith.

It is, of course, undisputed that Ms. Coleman was convicted of Medicaid fraud in 1985. Nonetheless, six months into serving her eighteen-month prison sentence, she received approval from the Minnesota Board of Teaching to resume her career as a teacher. While serving her sentence, Coleman obtained employment with the Shakopee School District and worked in that district for five years.[6] Nothing in this record

---

[6]The Shakopee School District was, of course, fully aware of Coleman's conviction since it hired Coleman while she was in prison. When Coleman applied for the principal position at Lincoln, she listed Shakopee Public Schools as a reference. Specifically, she listed Joane Block as her Shakopee reference. (See Appellant's App. at 31.) The record is silent as to whether Minneapolis school officials ever contacted Ms. Block or anyone in the Shakopee school system. Thus, we do not know whether

indicates that her service with the Shakopee School District was anything other than satisfactory.

In 1990, Coleman applied for and was hired by the Minneapolis School District as an assistant principal intern. The record is silent as to whether Coleman was asked at that time if she had a prior felony conviction. She served the full year as an assistant principal intern. Again, there is nothing in this record to indicate that her service was anything other than satisfactory. The following year, Coleman was hired as an assistant secondary principal with the Osseo Public Schools. Again, there is nothing in the record to indicate that her service was anything other than satisfactory.

In 1992, Coleman returned to the Minneapolis School District as a principal at Lincoln Elementary School. Notably, Coleman was Lincoln's fifth principal in just four months. When the Minneapolis School Board hired Coleman, there was significant opposition to her hiring. Several people sent letters urging that Coleman be removed as quickly as possible. One letter stated: "GET THAT GOD DAMN BLACK WIDDOW [sic] OUT OF THERE AS QUICKLY AS POSSILBE!" [sic] (Appellee's App. at 17.)

After serving as Lincoln's principal for several months, on June 7, 1993, Coleman was contacted by Daniel Loewenson, the district's human resources director. Loewenson asked Coleman to attend a meeting the next day with Associate Superintendent Katrina Reed and refused to disclose the purpose of the meeting. Loewenson did say, however, that Coleman could bring a union representative. Coleman brought her attorney. At the meeting, Reed told Coleman that someone

---

Minneapolis school officials, including the administrators, knew about Coleman's previous incarceration. If they had contacted Shakopee officials as part of their "due diligence" before hiring Coleman, it is hard to imagine that this subject did not come up.

"anonymously" informed the school district that Coleman had a prior felony conviction. Reed stated that she researched Coleman's criminal record and confirmed the conviction.

Coleman did not dispute the criminal conviction or the fact that she wrote "N/A" on her employment application. Rather than respond to the trial by ambush, Coleman's attorney requested a hearing on the matter. Reed allegedly responded that Coleman "had no right to any type of hearing."[7] Reed informed Coleman that absent a resignation, Coleman would be terminated that evening at the Board meeting.

That evening, the Board met privately and voted to suspend Coleman for thirty days with pay and terminate her employment on July 12, 1993. After the private meeting ended, the Board then held a public meeting and announced that Coleman would be terminated. It is important to note that the Board's agenda was printed on June 3, 1993, five days before the meeting actually took place, and specifically referred to Coleman's "release." At the public meeting, the Board did not specify the basis for Coleman's termination and neither Coleman nor her attorney addressed the Board. Eventually, the Board publicized its "true" reasons for terminating Coleman and circulated an unsigned notice to over 600 Lincoln elementary families and staff. It read:

STATEMENT RELATIVE TO JO COLEMAN,
PRINCIPAL,

---

[7]The record indicates that whenever the school board and/or school administration contemplated disciplinary action, such actions were preceded by seven day advance written notice. The notice stated the nature of the allegations and provided an opportunity for a response. For example, on May 7, 1993, Associate Superintendent Betty Webb sent Coleman a notice of deficiency indicating that Coleman had not handled herself properly when disciplining a student. Coleman was provided the above-mentioned procedural safeguards as they relate to the May 7, 1993 deficiency notice.

Minneapolis Public Schools received and confirmed information that Lincoln Elementary Principal, Jo Coleman was convicted of a felony prior to being employed by the district and served time at the Shakopee Women's Reformatory related to this conviction. The District was not made aware of the conviction by Mrs. Coleman at the time Mrs. Coleman was employed. The District has suspended Mrs. Coleman with pay while these and other matters are being further reviewed and addressed.

(Appellee's App. at 31.) Because of confusion as to the source of the notice, the Board circulated a second notice, printed on Board letterhead. The second notice explained that the human resources office erroneously disbursed the first notice without first copying the notice onto official letterhead. Thereafter, Coleman brought suit. The district court denied the administrators' motion for summary judgment on Coleman's constitutional law claims.

## II.

The majority concludes that the administrators provided Coleman with sufficient pretermination process. I disagree. The majority cites Riggins v. Board of Regents, 790 F.2d 707, 711 (8th Cir. 1986), for the proposition that an employer need not notify an employee prior to a pretermination hearing. Riggins is easily distinguishable. In Riggins, there was no doubt that the employee was aware of the allegations to be discussed at her pretermination hearing. See id. at 709. In this case, however, Coleman had no idea what the June 8 meeting would involve. Not only was Coleman "ambushed,"[8] but the pretermination administrators failed to follow their well-

---

[8]The majority cites Demming v. Housing & Redevelopment Authority, 66 F.3d 950, 953 (8th Cir. 1995), in support of its conclusion that Coleman was not "ambushed." Demming is inapposite. In Demming, similar to Riggins, the employee

established policies for disciplining and/or terminating employees. The record reveals that whenever disciplinary action was contemplated, seven-day advance written notice was required. While the required notice was supposed to reflect the nature of the allegations and provide an opportunity for one to respond, the administrators did not comply with these requirements.

The record reveals an even starker display of bad faith in that the Board had already decided to terminate Coleman prior to the June 8, 1993 meeting. The Board's agenda was printed on June 3, 1993, and it specifically referred to Coleman's "release." Moreover, the administrators' bad faith is bolstered by Reed's alleged comment that Coleman "had no right to any type of hearing." "Even where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decision-maker is likely to be before the termination takes place." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 543 (1985) (citations omitted).

In my view, a reasonable jury could conclude that Coleman was not provided proper pretermination notice, nor was she allowed to "present [her] side of the story." Id. at 543. The majority states, however, that "[i]n addition to her meeting with Reed, Coleman had a second opportunity to respond to the charge against her. . . . However, Coleman did not utilize this second opportunity to 'present [her] side of the story.'" Ante at 5-6, (quoting Loudermill, 470 U.S. at 546). Reed allegedly told Coleman that if Coleman did not immediately resign, she would be terminated at the Board meeting. Loudermill contemplates "proposed action" against an employee before termination.

---

was well aware of the hearing subject matter. For example, Demming "knew the board was in the process of reviewing her performance" before her pretermination hearing. Demming, 66 F.3d at 953. Unlike the employees in Demming and Riggins, the majority is unable to show that Coleman was even remotely aware of the reason for the June 8 "pretermination hearing."

470 U.S. at 546. While Coleman may not be entitled to the hearing of her choice, the Constitution demands that she be given meaningful notice and an opportunity to respond. Consequently, because a reasonable jury could conclude that the administrators had decided to terminate Coleman before providing a proper pretermination hearing, the district court properly denied the administrators' summary judgment motion.

III.

I also believe that there is a fact issue as to whether the appellants deprived Coleman of a liberty interest without due process. Coleman argues that the administrators distributed two notices concerning her conviction, prison term, and employment termination, to over 600 Lincoln elementary families and staff, without providing her prior notice or a meaningful opportunity to respond.

In my view, there is no question that the administrators made "charge[s] against [Coleman] that might seriously damage [her] standing and associations in [her] community." Board of Regents v. Roth, 408 U.S. 564, 573 (1972). "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to [her], notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). The majority concedes that the reasons given for Coleman's discharge stigmatized her and that the administrators made those reasons public. The majority concludes, however, that Coleman had an affirmative obligation to deny the charges.

The problem with the majority's reasoning is that Coleman did not have an opportunity to deny the charges. The administrators released two notices about Coleman's past after they provided Coleman with her so-called pretermination hearing. Without informing Coleman, the administrators released the first stigmatizing notice about Coleman on June 9, 1993, the day after Coleman was informed that she would be terminated. On June 10, 1993, the appellants released the second stigmatizing

-13-

notice. The fact that the administrators released the damning notices after they had already decided to terminate Coleman is no great surprise since the administrators apparently did not believe that Coleman was entitled to any type of process in the first place. Although their actions come as no great surprise, they are still unconstitutional and I would affirm the district court.

IV.

Finally, the majority determined that it need not decide whether the administrators were entitled to qualified immunity because Coleman's suit failed to allege that they had violated a clearly established constitutional right. Having already concluded that the administrators violated Coleman's constitutional rights, I now turn to whether the officials are entitled to qualified immunity.

Generally, qualified immunity is available for "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). In determining whether the administrators' conduct entitles them to such immunity, we look to whether it was objectively reasonable. Schleck v. Ramsey County, 939 F.2d 638, 641 (8th Cir. 1991) (citation omitted). In this regard, I agree with the district court when it stated:

> The evidence in this case suggests that the individual defendants were quite familiar with the Loudermill notice and hearing requirements; they had actually participated in such proceedings during the . . . period of time that plaintiff was employed with the District. In fact, just one month earlier in May, 1993, the individual defendants had provided plaintiff with these same protections during disciplinary proceedings against her. Any assertion by the individual defendants that they did not know plaintiff was entitled to such protections upon termination are simply incredulous in light of their prior actions.

-14-

<u>Coleman v. Reed</u>, No. 3-95-603, Mem. & Order, slip op. at 18-19 (D. Minn. Mar. 26, 1997).  Applying the standard of objective reasonableness to the administrators' actions in this case clearly compels the conclusion that they do not enjoy qualified immunity.

V.

For the reasons stated above, I believe that there are fact issues warranting a trial and the administrators are not entitled to qualified immunity.  Therefore, I would affirm the district court and allow Coleman to proceed with a trial on the merits.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.