**Betty DEEMER, Plaintiff,**

v.

**Sharon DURELL and the Decatur County Recorder's Office, Defendants.**

**No. CIV. 4–98–CV–90341.**

United States District Court, S.D. Iowa, Central Division.

Sept. 23, 1999.

Thomas M. Werneer, Des Moines, IA, for Plaintiff.

Carlton G. Salmons, Des Moines, IA, for Defendants.

PRATT, District Judge.

Plaintiff, a former deputy county recorder, filed suit under 42 U.S.C. § 1983 against the former county recorder and the county recorder's office for violation of her First and Fourteenth Amendment rights, as well as for intentional infliction of emotional distress under state law. Plaintiff claims she was unconstitutionally harassed and terminated from her job as deputy county recorder by the county recorder because of her political beliefs and her desire to run for the office of county recorder. Defendants have moved for summary judgment on all counts, arguing that Plaintiff was not protected from the county recorder's politically motivated discharge under the *Elrod–Branti* line of cases.

## I. Facts

As required on summary judgment, the following facts are viewed in the light most favorable to the plaintiff. *See* Fed. R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). The Decatur County Recorder's Office is responsible for various county filings and recordings, issuing assorted licenses, and responding to information requests received via telephone, letter, and in person. *See* Iowa Code § 331.602. It is a two-person office consisting of the county recorder and the deputy county recorder. Sharon Durell ("Durell") was first elected to the position of Decatur County Recorder ("County Recorder") in November of

1982, and was re-elected four consecutive times. She lost her position as County Recorder when she lost the general election in November of 1998.

Durell has known Betty Deemer ("Deemer") since the third grade. They were friends through Junior and Senior High School and remained the best of friends later in life, attending the same church and regularly socializing together. Durell was the Maid of Honor at Deemer's wedding. Deemer and Durell were both Republicans and shared similar political beliefs during the relevant time period. In January of 1991, the position of Deputy County Recorder ("Deputy Recorder") came open, and Durell invited Deemer to apply for the position. After applying and interviewing for the position, Deemer was appointed Deputy Recorder by Durell.

Deemer and Durell served together as the only employees in the County Recorder's Office without problems from 1991 until March of 1998. During this time both women served the public at the counter of the recorder's office, both women responded to mail inquiries, both took telephone calls from the public, both received money and kept accounts. During this time Deemer had access to all books and records in the recorder's office, as well as to the safe.

In early March of 1998, a group of Decatur County citizens approached Deemer about running for office against Durell. They told her that if she did not run, the Democratic candidate would probably beat Durell and Deemer would lose her job. Deemer had not seriously considered running against Durell prior to this and her decision to run against Durell was primarily motivated by concerns for her job security. On Saturday, March 14, 1998, Deemer went to Durell's house. At that time Deemer informed Durrell that she would run against Durell in the June 1998 Republican primary. Durell considered Deemer's candidacy a personal betrayal.

At work on Monday, March 16, 1998, Durell did not return Deemer's morning greeting. Deemer found on her chair birthday presents she had given to Durell's son the week before. On her desk she found thirty dimes in a baggie and Durell, making a religious reference, told her they were thirty pieces of silver, the customary cost for betrayal. Starting on that Monday, Durell notified Deemer of changes to Deemer's job responsibilities. Specifically, Durell relieved Deemer of certain tasks, including opening the mail, answering phones, balancing books, and handling bank deposits. The atmosphere in the office changed dramatically, with little communication between Deemer and Durell. Other changes were made that gave Durell more control over office procedures or provided for outside oversight. Durell began coming to work earlier and leaving later than Deemer.

On April 3, 1998, Durell gave Deemer a written reprimand, her first, which indicated: (1) refusal to correct a passport application; (2) non-compliance with the new office procedures regarding mail; (3) non-compliance with the new office procedures regarding accounting and reporting procedures; and (4) speaking "impertinently" to Durell while she was talking to a customer. On May 4, 1998, Durell had a deputy sheriff serve Deemer with a copy of a second reprimand which indicated: (1) impertinent speech to Durell in front of a county attorney; (2) contradictory comments to Durell in front of a customer; (3) calling inappropriate attention to error, real or perceived, in front of customers; (4) rudeness toward Durell in front of customers; (5) double-checking Durell in front of a customer; and (6) giving improper legal advice to a customer.

On June 2, 1998, Durell beat Deemer in the Republican primary by 21 votes. On June 9, 1998, Durell drafted Deemer's termination letter. On the morning of June 12, 1998, Deemer filed papers to run as an Independent in the general election for county recorder. On June 12, 1998, Durell, without knowing of Deemer's Inde-

pendent candidacy, told Deemer she should think about resigning. At the end of the day, Deemer told Durell she would not resign and Durell handed Deemer a termination letter "effective June 26, 1998."

Durell met with the County Board of Supervisors regarding Deemer's termination. Durell gave the Board a letter stating, in part, "I remain convinced that my termination of Ms. Deemer was justified by her acts of willful insubordination and misconduct which have been documented before her termination."

## II. Analysis

As a preliminary matter the Court will briefly comment on Defendants' Notice of Constitutional Challenge. Under the Local Rules, a party must give notice to the court when a constitutional challenge to a federal or state law is made. *See* S.D. Ia. L.R. 24.1. Such notice aids the court in complying with Federal Rule of Civil Procedure 24(c), which mandates the court notify the Attorney General of the United States or the state attorney general as applicable, to permit intervention, pursuant to 28 U.S.C. § 2403. In this case, however, no notice is due by the parties or the court as Plaintiff has not challenged the constitutionality of any federal or state statute.

## A. First Amendment Claim[1]

Defendants seek summary judgment on the grounds that Durell's termination of Deemer was a permissible patronage firing

not in violation of the First Amendment under the line of cases stemming from the Supreme Court's decisions in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). However, this case is not about a patronage dismissal. This case is not about the right of a public official to fire an employee on the basis of affiliation with a particular political party or faction of a party, or on the basis of her political views. Durell and Deemer belonged to the same political party and held similar political views.[2] Nor is this a case about the right of a public employer to implement a general policy prohibiting employees from running for office as provided in *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) and *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). No policies were implemented, and Durell did not terminate Deemer's employment until after the Republican primary.

■ The proper analysis of Deemer's First Amendment right to candidacy is under *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The government may not deny a public benefit such as employment to a person on a basis that infringes her constitutionally protected interests. *See Perry,* 408 U.S. at 597, 92

1. When examining whether a plaintiff's allegations are sufficient to overcome summary judgment on grounds of qualified immunity, a court should first decide whether plaintiff has presented a constitutional violation. *See Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), *cited in County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998). Once a constitutional violation is established, the court examines whether a reasonable person in the official's position would have known that his actions would violate such right. *See Greiner v. City of Champlin,* 27 F.3d 1346, 1351 (8th Cir.1994) (citing

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). This Court, therefore, delays any discussion of qualified immunity until a constitutional deprivation has been established.

2. It should be noted that even if the case did fall under an *Elrod–Branti* analysis, Durell's behavior would not be considered harassment as discussed in *Wallace v. Benware,* 67 F.3d 655, 661 (7th Cir.1995). Durell's conduct did not interfere with Deemer's ability to do her work; Durell relieved Deemer of certain responsibilities.

S.Ct. 2694. A court facing a challenge to government action allegedly infringing on a public employee's First Amendment rights must engage in a two-step analysis, determining first whether the speech at issue addresses a matter of public concern and if so, deciding the proper balance between the employee's constitutional rights and the State's interest as an employer in promoting efficient provision of public services. *See Pickering*, 391 U.S. at 568, 88 S.Ct. 1731, *cited in Burnham v. Ianni*, 119 F.3d 668, 678 (8th Cir.1997).

The first issue in this case is whether Deemer's announcement of her candidacy addressed a matter of public concern.[3] While there is no "fundamental right" to run for office, *see Bullock v. Carter*, 405 U.S. 134, 142–43, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), *quoted in Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), several courts have discussed that the very fact of running for elected office addresses matters of public concern, *see, e.g., Click v. Copeland*, 970 F.2d 106, 112 (5th Cir.1992); *Swanson v. VanOtterloo*, 993 F.Supp. 1224, 1239 (N.D.Iowa 1998). Yet other courts have found that there is no *per se* right to candidacy. *See Carver v. Dennis*, 104 F.3d 847, 852 (6th Cir.1997); *Newcomb v. Brennan*, 558 F.2d 825, 828 (7th Cir.1977). *Carver* is particularly analogous to the instant case and merits additional discussion.

In *Carver*, a deputy county clerk sued the county clerk claiming that her termination was a violation of her First Amendment rights. *See Carver*, 104 F.3d at 848. The clerk's office consisted of two employees, the deputy county clerk and the county clerk. *See id.* The deputy county clerk was an at-will employee. *See id.* The deputy did not hold different political views from her boss. *See id.* at 850. The parties did not dispute the fact that the deputy was discharged solely because she announced her candidacy for the county clerk's position. *See id.* The court held,

> [t]his record contains no evidence that the basis for [the deputy's] discharge was her exercise of her right to speak out on matters of public concern. Indeed, there is no evidence that [the deputy] either held or voiced any opinions on anything. The basis for her discharge was solely the fact that she was trying to take the job of her employer.

*Id.* at 852. The court ended the opinion by stating that the county clerk was not required to retain the deputy clerk, "[t]o hold otherwise, on the facts of this case, would be to read out of the entire line of relevant Supreme Court precedent the factual requirements of political belief, expression and affiliation, partisan political activity, or expression of opinion, and to read into that precedent a fundamental right to candidacy." *Id.* at 853. This Court disagrees. To find that the very act of throwing one's hat into the ring is itself "conduct addressing a matter of public concern" is not equivalent to finding a fundamental right to candidacy. The protected speech on matters of public concern must be weighed against the employer's right to an efficiently functioning office. The comment in *Carver* that "[t]he First Amendment does not require that an official ... nourish the viper in the nest" is absolutely accurate. Under a *Pickering* balancing, the employee's First Amendment rights would yield to the efficient workings of government. It does not stand to reason that the employee should be found to have no First Amendment right at all.

■ The Court is particularly concerned that in offices with only two or three employees, and particularly in offices where the tasks of the elected official are more clerical and less policy-driven, such as county clerk's or county recorder's office, the individual running for office will be

---

**3.** Although because Durell did not fire Deemer immediately upon hearing of her intention to run against Durell, this Court finds that it was this speech which clearly provoked Durell.

deemed to have no First Amendment right at issue. As the Eighth Circuit did not allow a small county/small political unit exception in the *Elrod-Branti* context, *see Horton v. Taylor,* 767 F.2d 471, 475–76 (8th Cir.1985), this Court does not believe one should be made in the *Pickering* context. In the race for a deputy recorder position in a small county, the personality of the candidates, as opposed to their political party or platform, may impact the performance of their duties as county recorder and thus be of public concern. The Court finds, therefore, that Deemer's candidacy was speech on a matter of public concern.

■ The second part of the *Pickering* inquiry is deciding the proper balance between the employee's constitutional rights and the State's interest as an employer in promoting efficient provision of public services. *See Pickering,* 391 U.S. at 568, 88 S.Ct. 1731. In balancing an employee's and employer's competing interests, the court weighs six interrelated factors: (1) the need for harmony in the workplace; (2) whether a close working relationship must exist between the employee and employer when the speech in question could cause that relationship to deteriorate; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform her duties. *See Bowman v. Pulaski County Special Sch. Dist.,* 723 F.2d 640, 644 (8th Cir.1983) (citing *Connick,* 461 U.S. at 151–54, 103 S.Ct. 1684).

■ The Court finds that there are no issues of material fact, and that in the context of this two-person recorder's office, the factors, taken as a whole, weigh in favor of the employer's interest in maintaining efficient provision of services. The county recorder cannot be forced to retain a deputy recorder vying for her job, especially one whom she thought was her best friend. The lack of trust between the employees would clearly impede the efficient performance of duties in the recorder's office.

**B. Fourteenth Amendment Claim**

■ To establish a procedural[4] due process claim, a plaintiff must first establish that a protected property or liberty interest is at stake. *See Gordon v. Hansen,* 168 F.3d 1109, 1114 (8th Cir.1999) (citing *Marler v. Missouri State Bd. of Optometry,* 102 F.3d 1453, 1456 (8th Cir. 1996)). "Property interests are not created by the Constitution itself. They must find their basis in some independent source, such as state law...." *Robinson v. City of Montgomery City,* 809 F.2d 1355, 1356 (8th Cir.1987). Because Deemer was an at-will employee under Iowa law, *see* Iowa Code §§ 331.603(2), 331.903(2), she had no property interest in her employment derived from state law, *see Pace v. Moriarty,* 83 F.3d 261, 262 (8th Cir.1996) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)).

■■ A liberty interest may be implicated, however, when a public employer makes statements that seriously damage an employee's good name. *See Coleman v. Reed,* 147 F.3d 751, 754 (8th Cir.1998). To establish such a liberty interest, Deemer must establish: (1) the reason for the discharge stigmatized her; (2) the administrator made the stigmatizing reason public; and (3) she denied the charges for which she was terminated. *See Coleman,* 147 F.3d at 755. "Unsatisfactory performance or general misconduct are insufficient to create a stigma that implicates an employee's liberty interest in his reputation." *Mascho v. Gee,* 24 F.3d 1037, 1039 (8th Cir.1994) (citing *Robinson,* 809 F.2d at 1356, and *Shands v. City of Kennett,* 993

---

4. Occupational liberty is not protected by the substantive due process clause. *See Singleton* *v. Cecil,* 176 F.3d 419, 428 (8th Cir.1999).

F.2d 1337, 1347 (8th Cir.1993)). "A charge of insubordination alone is normally insufficient to implicate a liberty interest." *Shands,* 993 F.2d at 1347. This Court finds there are no issues of material fact as to the content of the two reprimands or Durell's statements to the Decatur County Board of Supervisors regarding Deemer's termination, and that, as a matter of law, none of those statements rise to the requisite level of accusations of "dishonesty, immorality, criminality, racism, or the like." *See Shands,* 993 F.2d at 1347 (citing *Green v. St. Louis Hous. Auth.,* 911 F.2d 65, 69 (8th Cir.1990) (quoting *Harrison v. Bowen,* 815 F.2d 1505, 1518 (D.C.Cir. 1987)); *Robinson,* 809 F.2d at 1356; *Nathanson v. United States,* 630 F.2d 1260, 1264–65 (8th Cir.1980)).

## C. Intentional Infliction of Emotional Distress

 In Iowa, the tort of intentional infliction of emotional distress requires: outrageous conduct by the defendant; the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; the plaintiff suffered severe or extreme emotional distress; and the defendant's outrageous conduct was the actual and proximate cause of the emotional distress. *See Fuller v. Local Union No. 106 of United Brotherhood of Carpenters,* 567 N.W.2d 419, 423 (Iowa 1997). Before a defendant's conduct can be considered outrageous, it must be "beyond all possible bounds of decency ... regarded as atrocious, and utterly intolerable in a civilized community." *Fuller,* 567 N.W.2d at 422 (citation omitted). This Court finds no issue of material fact as to Durell's behavior after she was notified of Deemer's candidacy. As a matter of law, Durell's conduct cannot be considered "beyond all possible bounds of decency." Viewing the facts in the light most favorable to Deemer, Durell's actions were petty, rude, and meanspirited. They were not "utterly intolerable in a civilized community."

## III. Conclusion

For the foregoing reasons, this Court GRANTS Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**