# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-3386/02-3387

_____

| | | |
|---|---|---|
| H. John Putnam, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| | * | District Court for the |
| Diane Keller; Paul Krieger; David | * | District of Nebraska. |
| Stubbs; Harold McClure; Keith Pollard; | * | |
| Bill Schneider; Homer Pierce; Paul | * | |
| Liess; Don Anderson; Tom Pirnie; | * | |
| Kenneth Wortman; Joseph W. Preusser; | * | |
| Glenda Gallisath; Ellen Lake; Larry C. | * | |
| Glazer, | * | |
| | * | |
| Appellants/Cross-Appellees. | * | |

_____

Submitted: April 17, 2003

Filed: June 18, 2003 Corrected June 20, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and MELLOY, Circuit Judges.

_____

BEAM, Circuit Judge.

H. John Putnam (Putnam) brought this 42 U.S.C. § 1983 action against administrators of Central Community College (College). The College officials moved for summary judgment on qualified immunity grounds. The district court[1] granted the motion in part and denied it in part. Putnam and the College officials appeal. We affirm.

## I.    BACKGROUND

Putnam was a music instructor and faculty member of the College's Columbus campus for twenty-nine years. He was the founder and director of the performance group "Chorale." He retired from these positions in 2000, but he maintained part-time employment as an instructor through the fall of 2000. He also enrolled in an adult continuing education course for the 2000-2001 school year. Putnam was informed in January 2001, that the College was eliminating his part-time position. Around the same time, he received a letter from the College's counsel, informing him that he would be banned from campus until at least June 1, 2003, while he was under investigation for misappropriating school funds, in violation of school policy and perhaps state criminal law.[2] The letter also alleged that Putnam permitted and encouraged Chorale events that had "inappropriate sexual overtones," making the group he directed appear "cult-like." Putnam denied the accusations in his written response to the College, and he asked for the ban to be lifted.

After several written pieces of correspondence between Putnam and the College, with no result, Putnam brought this action. He claims that the College deprived him of liberty interests without procedural due process, violated substantive

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

[2]The district court referred to this letter and subsequent letters from counsel for the College as "stay-away" letters.

due process rights, and violated free speech and association rights. The College officials moved for summary judgment based on qualified immunity. The district court granted this motion with respect to Putnam's substantive due process claim, but denied the motion with respect to Putnam's procedural due process and freedom of speech and association claims.

## II.    DISCUSSION

The College officials appeal the district court's adverse rulings.[3] Putnam appeals the ruling that the officials are entitled to qualified immunity on his substantive due process claim. The denial of a motion to dismiss or for summary judgment is not generally immediately appealable because it is not a final order. Pendleton v. St. Louis County, 178 F.3d 1007, 1010 (8th Cir. 1999). However, since qualified immunity is "in part an entitlement not to be forced to litigate the consequences of official conduct[,]" it is an exception to the general rule and we can review, prior to trial, the denial of a summary judgment motion premised on qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 526-27 (1985). We review the district court's qualified immunity rulings de novo. Entergy, Arkansas, Inc. v. Nebraska, 241 F.3d 979, 987 (8th Cir. 2001).

"The threshold inquiry in a qualified immunity analysis decided on a motion for summary judgment is whether the plaintiff has alleged facts sufficient to establish a constitutional violation." Hill v. McKinley, 311 F.3d 899, 902 (8th Cir. 2002). We will affirm a grant of summary judgment based on qualified immunity if the "conduct

---

[3]We reject the College officials' separate argument that they are insulated from liability due to "extraordinary circumstances" – that is, their reliance on the advice of their attorney. See Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). This contention is without merit. See Wentz v. Klecker, 721 F.2d 244, 247 (8th Cir. 1983) (stating "reliance on the advice of counsel alone will not satisfy an official's burden of acting reasonably").

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

> An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district court has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.

Mitchell, 472 U.S. at 528. If the allegations do not establish a constitutional violation, then we do not need to inquire any further into qualified immunity. Saucier v. Katz, 533 U.S. 194, 201 (2001). However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. Thus, we turn to Putnam's specific constitutional claims.

### A.    Procedural Due Process

To overcome the College officials' claim of qualified immunity, Putnam must satisfy a two-part test: (1) he must allege a violation of a constitutional right, and (2) he must show that the right is clearly established. Id. We first consider whether he alleged a violation of a constitutional right. Putnam is entitled to procedural due process if he can show that the College officials deprived him of a constitutionally protected liberty or property interest. Winegar v. Des Moines Indep. Cmty. Sch. Dist., 20 F.3d 895, 899 (8th Cir. 1994).

-4-

> An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges. The requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism, and the like.

Id. (citations omitted). If an employer makes these types of allegations, then the employee is entitled to an opportunity to clear his name. Coleman v. Reed, 147 F.3d 751, 755 (8th Cir. 1998).

In order to establish a procedural due process claim for the loss of this protected liberty interest, Putnam must show (1) that he was stigmatized by the allegations which resulted in his discharge; (2) that the College officials made the allegations public; and (3) that he denied the allegations. See id. The College officials claim that Putnam did not lose his part-time position for any other reason than to accommodate the hiring of a full-time person for that position. However, the district court noted that

> the accusations made against Putnam in the "stay-away" letters implied dishonest and criminal behavior in allegedly misappropriating college funds, and immoral conduct with regard to practices of the Chorale group which he had founded and led for many years. In fact, the first letter stated explicitly that the investigation had shown that Putnam had violated school policy and possibly state criminal laws.

Putnam v. Keller, No. 8-01CV484, slip op. at 7 (D. Neb. July 24, 2002). We agree with the district court that the accusations made against Putnam rise to the level of stigma articulated in Winegar and Coleman. Additionally, it is undisputed that Putnam denied the accusations against him in a letter from his attorney to the College, in response to the initial "stay-away" letter.

-5-

Finally, we must determine whether or not the College officials made the accusations against Putnam public. Coleman, 147 F.3d at 755. "The requisite dissemination triggering the right to a name-clearing hearing occurs where the public employer makes stigmatizing allegations, in connection with the employee's discharge, 'in any official or intentional manner.'" Speer v. City of Wynne, 276 F.3d 980, 985 (8th Cir. 2002) (quoting In re Selcraig, 705 F.2d 789, 796 n.6 (5th Cir. 1983)). The College officials claim that they maintained the charges against Putnam in strict confidence. But, the district court, in holding that the accusations against Putnam were made public, found that Putnam submitted evidence "to suggest that the accusations were made known to other faculty and staff members in Columbus; that information about the ban had leaked to additional faculty at the Grand Island and Hastings campuses; and that the Platte County Sheriff and County Attorney were shown the stay-away letter." Putnam, slip op. at 8. After reviewing the evidence before the district court, we agree that Putnam has at least conditionally established that the College officials did, indeed, publish the allegations against Putnam. Therefore, Putnam has sufficiently stated a constitutional violation.

Now we must determine whether this procedural due process right–to a hearing to clear his name–was clearly established, in the context of this case. In this analysis, we must remember that "the 'contours' of a right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right' before a defense of qualified immunity is unavailable to him." Holloway v. Reeves, 277 F.3d 1035, 1037 (8th Cir. 2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In Board of Regents v. Roth, 408 U.S. 564, 573 (1972), the Supreme Court held that the State must provide a name-clearing hearing if a person's "good name, reputation, honor, or integrity" are put at issue by the State. We hold that Putnam had a clearly established protected liberty interest in his "good name, reputation, honor, or integrity," based on the holdings of Roth, Winegar, and Coleman. The district court properly determined that the College officials are not entitled to qualified immunity on Putnam's procedural due process claim.

-6-

**B.     Substantive Due Process**

Putnam also claims that the College officials violated his substantive due process rights.  Here we must again determine whether or not Putnam alleged a clearly established constitutional violation.  The "core of the concept [of substantive due process is] protection against arbitrary action" by the government.  County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998).  "While due process protection in the substantive sense limits what the government may do in both its legislative, and its executive capacities, criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." Id. at 846 (internal citations omitted).  In this case, we must assess whether a "specific act of a governmental officer" is arbitrary.

"Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"  Id. (quoting Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992)).  In other words, to establish a substantive due process claim, Putnam has to show that the College officials' arbitrary action "shocks the conscience."  Id. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."  Id. at 849.  We may also consider conduct that evinces a "deliberate indifference" to protected rights of Putnam, if the College officials had an opportunity to consider other alternatives before choosing a course of action.  Neal v. St. Louis County Bd. of Police Comm'rs, 217 F.3d 955, 958 (8th Cir. 2000) (providing that "where a state actor is afforded a reasonable opportunity to deliberate various alternatives prior to electing a course of action, the chosen action will be deemed 'conscience shocking' if the action was taken with 'deliberate indifference'") (citing Lewis, 523 U.S. at 850-51).  Therefore, not all actions that cause harm will impose liability on government officials.  Lewis, 523 U.S. at 848.

Putnam alleged a substantive due process violation by showing that the College officials were "deliberately indifferent" to his rights. After reviewing the record, we find that the College officials had a reasonable opportunity to consider various alternatives before deciding what action to take with regard to Putnam, as required by Neal. The officials could have discussed their concerns with Putnam in person or taken a host of other actions, but they instead chose to send a letter to Putnam, accusing him of misappropriating school funds and encouraging "inappropriate sexual overtones" at Chorale events and banning him from the campus. But, we recognize that "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." Id. at 850.

Putnam argues that his "constitutionally protected interests in speech and association, and his constitutionally protected liberty interest as employee, student, or community member" were clearly established rights that were violated. Brief of Appellee/Cross-Appellant at 53. However, this does not carry the day for him. The Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Collins, 503 U.S. at 125. The Court has recognized the right "to marry; to have children; to direct the upbringing and education of one's children; to marital privacy; to use contraception; to bodily integrity; to abortion; and, perhaps, the right to refuse unwanted medical treatment" as liberty interests protected by substantive due process. Moran v. Clarke, 296 F.3d 638, 644-45 n.5 (8th Cir. 2002) (internal citations omitted). We refuse to further "expand the concept of substantive due process" to include the procedural due process and free speech claims presented by Putnam. Therefore, the College officials are entitled to qualified immunity on Putnam's substantive due process claim.

## C.      Freedom of Speech and Association

Putnam alleges that the College officials' decision to ban him from the campus violated his rights of free speech and association.  The officials counter that the ban did not impact Putnam's First Amendment rights because the College campus is a non-public forum.  The district court concluded that the campus is "at least in part" a designated public forum, citing Nebraska Revised Statutes § 85-962.[4]  Putnam, slip op. at 13.  According to the district court, Putnam's status as a non-traditional student and community member granted him access to the campus.  As with Putnam's other claims, we must first consider whether or not he has shown a violation of his constitutional rights.  If he has made this showing, then we again must consider if those rights were clearly established at the time he was banned from the College.

In Perry Education Association v. Perry Local Educators' Association, 460 U.S. 37, 44 (1983), the Supreme Court held that "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue."  The Court describes a designated public forum as property "which the State has opened for use by the public as a place for expressive activity."  Id. at 45.  Although the government is not required to open a designated public forum, if it does so, then it must ensure that time, place, and manner restrictions are reasonable and a "content-based prohibition must be narrowly drawn to effectuate a compelling state interest."  Id. at 46.  However, if the public property "is not by tradition or designation a forum for public communication[,]" then the government may impose time, place, and manner restrictions as well as "reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to

---

[4]This provision provides the following: "It is the intent of the Legislature that the community colleges shall be student-centered, open-access institutions primarily devoted to quality instruction and public service."  Neb. Rev. Stat. § 85-962.

suppress expression merely because public officials oppose the speaker's view." Id. Our task is to evaluate the character of the College campus.

We find that the College campus is a designated public forum because the record establishes that the College opened the campus for expressive activities, such as musical performances and other activities available to the public. As such, Putnam has the same First Amendment right of access to the campus as does any other member of the community. In order to ban Putnam from the campus, the College officials must show that the restrictions are narrowly drawn to serve a compelling interest. Id. The officials have made no such showing. Thus, we agree with the district court that Putnam has demonstrated a violation of constitutional rights. We also agree that Putnam's free speech rights were clearly established at the time the College officials banned him from the campus. See id. at 44-46. The officials are not immune from suit on the issue of violations of Putnam's First Amendment rights.

## III.   CONCLUSION

We affirm the denial of qualified immunity to the College officials with respect to Putnam's procedural due process and First Amendment claims, and we affirm the grant of summary judgment in favor of the College officials based on qualified immunity on Putnam's substantive due process claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.