# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-1935

———————

David J. Westbrook, Jr.,       *
       *
      Appellant,       *
       *   Appeal from the United States
   v.       *   District Court for the
       *   District of Nebraska.
City of Omaha, Alan Pepin,       *
Tim Cavanaugh, James Roberts,      *   [UNPUBLISHED]
and Cecil Hicks,       *
       *
      Appellees.       *

———————

Submitted: March 12, 2007
Filed: March 30, 2007

———————

Before MELLOY, SMITH, and BENTON Circuit Judges.

———————

PER CURIAM.

      David J. Westbrook, Jr., sued the City of Omaha, Alan F. Pepin, Timothy W. Cavanaugh, James A. Roberts, and Cecil Hicks, Jr., under 42 U.S.C. § 1983, claiming violation of the Fourth, Fifth, and Fourteenth Amendments. All parties moved for summary judgment. The district court[1] granted summary judgment to Omaha and the

———————

[1]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

individual defendants.  Westbrook appeals.  Having jurisdiction under 12 U.S.C. § 1291, this court affirms.

## I.

In 2003, Westbrook, an Omaha police officer, arrested Darrel Williams.  After Williams' release from custody, he submitted a citizen's complaint, alleging that Westbrook took $106 from him at arrest and did not return it.  Internal affairs investigated, as well as a criminal investigator.  In the criminal investigation, the city prosecutor preliminarily decided not to prosecute Westbrook and, later, reexamined whether prosecution was warranted.

During the internal affairs investigation, witnesses agreed that Williams had money at the time of arrest.  Williams and Westbrook were interviewed.  Westbrook was asked about a casino wager of $120 he made the day after Williams' arrest.  Westbrook stated that he usually took $100 to $200 in cash to a casino, after stopping at an ATM.  Westbrook was ordered to submit his bank records for two dates, the day of the arrest and the day of the wager.  Westbrook complied, submitting a bank statement that showed no pertinent withdrawals.

Upon completion of the internal investigation, Westbrook received a letter stating that Williams' complaint of mishandling or theft of $106 had been investigated, that Williams' polygraph showed truthful responses, and that his polygraph exhibited deception about the cash.  Further, the investigation found evidence that Williams' money was mishandled and converted by Westbrook to his possession.  The letter also noted that Westbrook acknowledged the existence of the money, but was not truthful about its whereabouts.  The notice concluded that Westbrook violated enumerated rules of conduct, operating procedures, and the collective bargaining agreement in mishandling prisoner's property, false reporting, and theft of money.  The letter

recommended dismissal from employment. After receiving the letter, Westbrook was contacted by local media seeking his comment.

At a pre-termination hearing, Westbrook was represented by counsel, and had the opportunity to present his side of the story. After the hearing, Westbrook was discharged. He then participated in post-termination arbitration. At arbitration, Omaha had the burden of proof on all charges. Numerous witnesses testified. After the post-termination hearing and review of all evidence, the arbitrator found "good cause" to terminate Westbrook's employment.

Westbrook now sues the City of Omaha and defendant police officials, asserting unlawful search and seizure, and violation of due process springing from his employment termination. After losing on summary judgment, Westbrook appeals.

II.

This court reviews the grant of summary judgment *de novo*, applying the same standard as the district court and viewing the record most favorably to the nonmoving party. *Herring v. Canada Life Assurance Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000). "Summary judgment is appropriate when no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law." *Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1280 (8th Cir. 1996); *Fed. R. Civ. P. 56.*

Westbrook first contends the department's order directing him to submit bank records for the two days in question, without a warrant, violated his possessory and privacy interests under the Fourth Amendment. He also asserts that the entanglement between the department's law-enforcement function and its employer status requires strict application of the Fourth Amendment's standard of reasonableness. He further claims that because the bank records were requested from him, and not the bank, they are private records entitled to Fourth Amendment protection. At issue is the

department's policy governing employees subject to an internal affairs investigation that states: "An employee may be requested to submit to a financial disclosure statement."

"Searches and seizures by government employers or supervisors of the private property of their employees . . . are subject to the restraints of the Fourth Amendment." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987); *see Lesher v. Reed*, 12 F.3d 148, 150-51 (8th Cir. 1994) ("A government employer's seizure of property possessed by an employee is clearly subject to Fourth Amendment restraints"). Therefore,

> public employer intrusion on the constitutionally protected privacy interest of government employees . . . for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances. Under this reasonableness standard, both the inception and the scope of the intrusion must be reasonable . . . .

*O'Connor*, 480 U.S. at 725-26. "The search will be permissible in its scope when 'the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of . . . the nature of the [misconduct]'" *Id.* at 726 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 342 (1985)) (alteration in original).

In this case, Omaha's intrusion began with a citizen complaint that Westbrook took money and wagered at a casino the next day, considered with his assertion of usually withdrawing money from an ATM before wagering. The scope of the intrusion was an order for two-days' record of Westbrook's banking, to which he complied. Under these circumstances, neither the inception nor the scope of intrusion was unreasonable. The investigation's purpose was to determine employee, work-related misconduct, and not criminal prosecution. *See Uniformed Sanitation Men Ass'n, Inc. v. Comm'r of Sanitation*, 392 U.S. 280, 284 (1968) (citing *Garrity v. New Jersey*, 385 U.S. 493 (1967), and stating "that testimony compelled by threat of

-4-

dismissal from employment could not be used in a criminal prosecution of the witness"). Thus, the district court did not err in granting summary judgment on the Fourth Amendment claim.

Westbrook next asserts the district court erred in granting summary judgment on qualified immunity grounds. He bases this assertion on the ordered disclosure of his bank records without a warrant.

> When analyzing qualified immunity, courts conduct a two-part inquiry. The court must first consider the threshold inquiry of whether the facts alleged, taken in a light most favorable to the party asserting injury, show the defendants' conduct violated a constitutional right. If a constitutional right has not been violated, it is unnecessary to inquire further regarding qualified immunity.

*Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (internal citations omitted). Because a constitutional right has not been violated, the individual defendants are entitled to qualified immunity. Grant of summary judgment on this issue, therefore, was not error.

Westbrook finally claims his due process rights were violated by the pre-termination and post-termination procedures. Westbrook possessed a property interest in continued employment. *See Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). He asserts violation in the pre-termination hearing, citing an inadequate explanation of evidence against him and an inability to initiate discovery before the hearing, which (he claims) would show exculpatory evidence of other complaints of missing property at the detention center. Westbrook also contends a question of material fact remains whether the name-clearing, post-termination arbitration cured the asserted pre-termination defects.

"Due process requirements are met when a public employer provides a tenured public employee with appropriate pre-termination and post-termination proceedings." *Smutka v. City of Hutchinson*, 451 F.3d 522, 526 (8th Cir. 2006).

> To satisfy minimal due-process requirements at the pre-termination stage, a public employer must give the public employee "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee."

*Id.* at 526-27 (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). When the employee is actually fired, he "has an opportunity to receive some measure of post-termination process, usually a hearing with heightened procedural safeguards. *Loudermill* instructs us that extensive post-termination proceedings may cure inadequate pretermination proceedings." *Krentz v. Robertson Fire Prot. Dist.*, 228 F.3d 897, 902 (8th Cir. 2000)(citing *Loudermill*, 470 U.S. at 546-48).

In this case, at the pre-termination stage, Westbrook was notified of the charges against him and given an explanation of the employer's evidence. In addition to his interview, he was notified in writing that the citizen's complaint alleging mishandling or theft of $106 had been investigated; the citizen's polygraph showed truthful responses and his polygraph exhibited deception; money was mishandled and converted by Westbrook to his possession; and he was not truthful about it. The notice listed charges under enumerated rules of conduct, operating procedures, and the collective bargaining agreement in mishandling prisoner's property, false reporting, and theft of money. At the pre-termination hearing, Westbrook was represented by counsel. His counsel objected to the notice of evidence, but Westbrook had the opportunity to give his side of the story. *See Smutka*, 451 F.3d at 527 (no violation of procedural due process rights in pre-termination consideration of non-noticed

misconduct); *Riggins v. Bd. of Regents*, 790 F.2d 707, 711 (8th Cir. 1986) (procedural due process satisfied although employee did not have prior notice that work history would be considered in termination decision). Thus, the pre-termination hearing was not constitutionally defective.

Westbrook was contacted by the media about his termination. He has not shown that Omaha or its officials publicized his discharge. "The Due Process clause protects against deprivations of liberty interests as well as property interests." *Gibson v. Caruthersville Sch. Dist. No. 8*, 336 F.3d 768, 772 (8th Cir. 2003). A name-clearing hearing is appropriate when the government makes public the reasons for discharge that stigmatize an employee's standing in the community. *See id*. at 773 (discussing elements warranting name-clearing hearing); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)(stating "notice and opportunity to be heard are essential"); *Putnam v. Keller*, 332 F.3d 541, 546 (8th Cir. 2003) ("An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges").

The post-termination hearing was conducted by an arbitrator chosen by the parties. Westbrook was represented by counsel. Numerous witness were examined by Westbrook and Omaha. Omaha had the burden of proof on all charges. The hearing was extensive and gave Westbrook the opportunity to address all charges against him, to refute just cause for termination, and to clear his name. The arbitrator found that Omaha had just cause for dismissal. Westbrook's procedural due process rights were not violated.

The judgment of the district court is affirmed.

_____